THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DR. SCHOLL'S FOOT COMFORT SHOPS, INC., Appellant.

Argued January 18, 1938; decided March 8, 1938.

*Samuel S. Allan* for appellant. Legislation regulating the practice of podiatry was enacted solely as a means of protecting the public health, and, when practiced by a duly licensed podiatrist, the public health is adequately protected, this whether the podiatrist practices on his own behalf or on behalf of his corporate employer. (*Liggett Co.* v. *Baldridge,* 278 U. S. 105; *Pratter* v. *Lascoff,* 261 N. Y. 509; *Matter of Dickson* v. *Flynn,* 246 App. Div. 341; 273 N. Y. 72; *Dvorine* v. *Castelberg Jewelry Corp.,* 185 Atl. Rep. 562; *State* v. *Armstrong,* 38 Ida. 493.) The conviction should not be sustained, as defendant

cannot be deemed to have practiced podiatry within the meaning of the Education Law (Cons. Laws, ch. 16). (*Scadron's Sons, Inc.*, v. *Susskind*, 132 Misc. Rep. 406; *Matter of Dickson* v. *Flynn*, 246 App. Div. 341; *Jaeckle* v. *Bamberger & Co.*, 119 N. J. Eq. 126; *Dvorine* v. *Castelberg Jewelry Corp.*, 185 Atl. Rep. 562.) The acts of defendant's salesmen or nurse do not constitute the practice of podiatry by defendant within the meaning of and in violation of the Education Law. (*State* v. *Armstrong*, 38 Ida. 493; *State Board* v. *Uchin*, 9 N. J. Misc. Rep. 966.)

*John J. Bennett, Jr., Attorney-General* (*Dorothy U. Smith* and *Henry Epstein* of counsel), for respondent. The practice of podiatry by defendant was unlawful. (Cons. Laws, ch. 16, §§ 1402, 1412; *Matter of Co-operative Law Co.*, 198 N. Y. 479; *People* v. *Woodbury Dermatological Institute*, 192 N. Y. 454; *Mertz* v. *Mertz*, 271 N. Y. 466.)

FINCH, J. The defendant has been convicted of unlawfully practicing podiatry, by the Court of Special Sessions of the City of New York, one justice dissenting. The Appellate Division unanimously affirmed the conviction, and the appeal is here by permission of a judge of this court.

The undisputed facts are as follows: The appellant is a Delaware corporation, which operates a chain of stores selling at retail shoes for men, women and children. One of the stores is located in Manhattan. This store employs, in addition to the regular shoe salesmen, a duly licensed chiropodist and a registered nurse who gives vibratory foot massage treatments under the supervision and direction of the chiropodist, and assists him.

The defendant sells, in addition to shoes, accessories such as arch and ankle supports, pads and plasters. In fitting shoes, its salesmen are trained to use a mechanical device known as a pedograph. This registers an imprint which reveals the outer physical characteristics of the

feet of the customer and, when read by the salesman, enables him to determine with greater accuracy the proper width, length and size of the shoe or arch support, if one is required. No charge is made for this service. The appellant states that this pedograph has been used by it for many years, and that it is used by a number of shoe stores throughout the country, and by hygiene and physical education departments in government institutions, hospitals, schools and colleges.

Two special investigators, employed by the State Department of Education, visited the premises of the defendant, ostensibly for the purpose of purchasing shoes, but in reality to obtain evidence for this suit. Upon entering, the salesman took a pedograph imprint of the feet of one of the investigators and in response to a question by this investigator, the salesman told her that the prints showed that she had a weak metatarsal, that her toes curved under, and that she needed arch supporters in order to receive the maximum comfort from her shoes. In further answer to a question by the investigator, requesting information concerning perspiring feet, she was told that this condition was traceable to weak feet, that her feet were in the " third stage of weak feet," and that she should take a course of treatments given by the licensed chiropodist, which treatments consisted of a chiropodic treatment and five vibratory massage treatments. The investigators left, but returned several days later and received from the podiatrist and the nurse the chiropodic and massage treatments previously suggested by the salesman. While treating one of the investigators, the chiropodist inquired whether the gentleman upstairs had checked on her shoes. The chiropodist also stated that he thought the investigator needed a pair of arches. The treatment of the chiropodist was followed by a vibratory massage treatment, given by the registered nurse under his supervision. Thereafter, the investigator was again waited on by the shoe salesman, who took another pedographic imprint of her feet

and made substantially the same remarks as on her prior visit; he advised the wearing of arches at all times, as her feet were in "the third stage of flat feet." She again received the vibratory massage treatments, and on five subsequent visits she received these massages, paying five dollars for the series of treatments; but she did not purchase any shoes or arch supports, and did not pay for the pedographic imprints or for the suggestions and recommendations made by the salesman in reference to the kind of shoes she should purchase or the arches she should wear.

The following questions are presented for decision: Did the employment by the defendant of a duly licensed podiatrist, to render service to its customers who desired such service, constitute the practice of chiropody or podiatry in violation of the Education Law (Cons. Laws, ch. 16) of this State? Did the defendant unlawfully practice podiatry when a salesman, as an aid to selling its merchandise, took impressions of the customer's feet by means of a pedograph, and at her request suggested the type of shoes she needed and remarked about the condition of her feet? Was it unlawful for the defendant to employ a nurse who gave massage treatments under the supervision and direction of a licensed podiatrist?

The Education Law at the time these acts occurred provided that "No person not heretofore legally authorized to practice chiropody in the state of New York shall be permitted to engage in such practice unless he shall have been duly licensed so to do." (Education Law, § 1402.) It further provided that "Any person who * * * shall practice chiropody or any branch thereof * * * without conforming to the requirements of this article * * * shall be guilty of a misdemeanor." (Education Law, § 1412.)

At common law, any person was permitted, without let or hindrance, to apply palliative and mechanical treatment for deformities and functional disturbances of the feet. Scientific knowledge of the diseases or

structure of the feet was not required for the practice of the calling until 1895, when the Legislature, as an aid to the protection of public health, made it mandatory upon persons to obtain certificates of merit, or licenses, from the Pedic Society, before permitting them to practice chiropody or podiatry. (L. 1895, ch. 864.) Starting in that year, the statute has been many times amended. At present it is to be found in article 53 of the Education Law and the licensing authority is now the Board of Regents. Neither in the original statute nor in any of the amendments thereto has any express restriction been placed upon the employment by corporations of duly licensed chiropodists. It is contended, however, that the present statute, in providing that " no person " shall practice chiropody without a license, bars the employment of licensed chiropodists by a corporation; that a corporation is a person; that it cannot be licensed, and that, therefore, it cannot employ licensed practitioners.

This construction involves an unjustifiable reading into the statute of terms which it does not contain. The statute does not mention corporations, and on its face has no applicability to corporations. Its obvious purpose is to protect the public health by prohibiting any one from treating or diagnosing foot ailments unless qualified, and by requiring such qualification to be shown by the possession of a license. Neither the context nor the object of the statute accords with the interpretation which would prevent corporations from employing licensed chiropodists.

That this is the proper construction of the statute is confirmed when we examine the statutes regulating analogous professions. The Education Law provides that a corporation selling eyeglasses must have a duly qualified optometrist in charge of the counter at which such sale is made. (Education Law, § 1432-a; *Matter of Dickson* v. *Flynn*, 273 N. Y. 72.) In the field of pharmacy, attempts to confine ownership of drugstores to licensed pharmacists, or to corporations whose stock is owned

solely by licensed pharmacists, have been declared unconstitutional, on the ground that such a requirement concerning ownership bore no real relationship to public health, and, therefore, was unreasonable. (*Liggett Co.* v. *Baldridge*, 278 U. S. 105; *Pratter* v. *Lascoff*, 261 N. Y. 509.) A corporation, therefore, may own a drugstore and employ licensed pharmacists to compound prescriptions.

The analogy between the profession of podiatry or chiropody and those of optometry and pharmacy, is a close one, and in the absence of a clear expression of intention we should not hold that licensed practitioners of one may not be employed by a corporation when the Legislature permits such employment of the others.

We are referred to other professions. Law and medicine are ancient and learned professions. Between doctor and patient and lawyer and client there is a confidential and trust relationship which does not exist between the chiropodist and those whom he treats. Dentistry also is recognized as a specialized branch of medicine, and the dentist treats diseases of the teeth and mouth, whereas the podiatrist is prohibited from treating communicable or constitutional diseases of any kind.

We next consider whether the acts of the salesman constituted the practice of chiropody. Clearly the use of the pedograph as a mechanical aid in determining the proper size of the shoe required does not constitute the practice of chiropody. Whether the statements by the salesman, in answer to the inquiries of the customer, constituted a diagnosis, is a more difficult question. It would be an unreasonable and harsh construction of the statute to hold that it was intended to prohibit shoe salesmen from pointing out to customers the manifest abnormalities of their feet when questions are put to them by the customers. It is clear from the record that the salesman at no time held himself out as being a podiatrist or being able to practice chiropody. On the contrary, he referred the customer to the duly licensed

chiropodist. Some of the salesman's remarks may have verged close to diagnosis, but we should not hold that a mere remark concerning an obvious fact or a loose use of language concerning a manifest abnormality constitutes practicing podiatry.

Similarly, the nurse who gave massage and vibratory treatments under the direction of the licensed podiatrist was not practicing podiatry any more than a nurse who assists a physician is practicing medicine.

It follows that the judgments should be reversed and the information dismissed.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Judgments reversed, etc.