Hagarty, J.
The information, as originally filed, alleged' that between October 10 and October 26, 1945, at 51 Clark Street, Brooklyn, defendant unlawfully practiced medicine on Howard J. Picard and divers other persons whose names were unknown to the Attorney-General. Amendment thereof so as to include therein, after the name of Picard, the names of Edna Aaron and Millie Berg was not error. The unlawful practice can be spelled out from a series of acts. (People v. Firth, 157 App. Div. 492; People v. Silver, 158 App. Div. 217.)
In the case relied on by appellant (People v. Miles, 289 N. Y. 360), defendant was charged in the indictment with contriving, drawing and assisting in a lottery on or about May 3, 1938. During the course of the trial and in reliance on section 295-j of the Code of Criminal Procedure permitting amendment of the indictment by adding new counts, “ where it is made to appear that the crimes to be charged therein relate to the transaction upon which the defendant stands indicted ”, on motion of the District Attorney the indictment was amended by adding a new count thereto alleging the contriving, drawing and assisting in a lottery on May 9, 1938, a date six days subsequent to the date of the crime charged in the indictment as returned by the grand jury. The Court of Appeals held that this new count was not related to the transaction upon which the defendant was indicted and, inasmuch as the grand jury had never accused the defendant of the crime charged in the added count, which was the only count on which the defendant was found guilty, the judgment of conviction was reversed and the indictment dismissed.
*528 There is no similarity between the Miles case {supra) and the one under review. There is no element here of failure of the body charged with the duty of making accusations to accuse defendant of the crime. The Attorney-General is charged with the prosecution of any criminal action for unlawful practice of medicine (Education Law, § 1263) and, inasmuch as separate acts may be shown, the effect of the amendment was merely to make the nature of the charge more definite, in that two of the “ divers other persons ” were identified by name.
The information is predicated upon section 1251 of the Education Law prohibiting the practice of medicine, as defined by the preceding section, without a license. There are many statutory ' exceptions whereby, in effect, the practice of medicine as so defined is permitted to a limited and prescribed extent by reason of a license procured upon qualification. “ A license to practice physio-therapy shall not permit the holder thereof to administer drugs or to practice medicine as defined in section twelve hundred and fifty of this article, except to treat diseases under the supervision of a duly licensed physician.” (Education Law, § 1262, subd. 2; see People v. Mari, 260 N. Y. 383.) In considering the legal functions of a nurse (Education Law, §§ 1376, 1377), the Attorney-General, in an informal opinion, has stated: “ The Education Law does not contain a definition of nursing. According to usage, however, the nurse administers various types of therapeutic treatment under the direction of a physician. The administration of medicines, the application of prescribed treatment, the giving of hypodermic injections and many other, duties of importance are among the acts commonly performed by the nurse under the physician’s direction. The administration of anesthesia falls within the same category. If done under the direction of a physician, such act on the part of a nurse does not involve a violation of law.” (48 N. Y. St. Dept. Rep. 137, 138; see People v. Dr. Scholl’s Foot Comfort Shops, Inc., 277 N. Y. 151,158.) A duly licensed New York City massage operator comes within the scope of the exceptions. The Legislature must have so intended when it enacted the Administrative Code of the City of New York (L. 1937, ch. 929), article 26 of title B of chapter 32 of which provides for licensing of “ Massage operator ” and section B32-193.0, subdivision 1, of which defines such term.as “ A person who applies manual or mechanical massage or similar treatment to the human trunk or limbs * *
A so-called licensed massage operator, and the defendant is such, may practice to the extent, and no more, of massaging *529 the body by manual or mechanical means, although he or any other person may lawfully point out a manifest abnormality. (People v. Dr. Scholl’s Foot Comfort Shops, Inc., 277 N. Y. 151, 157, supra.) Defendant could not lawfully prescribe or diagnose, or. administer treatments in any other manner. He was guilty of the crime charged, then, if he undertook to act as a physiotherapist by the use of treatments other than manual or mechanical massages, and is also guilty if he made representations of the therapeutic value of his massages. (People v. Mulford, 140 App. Div. 716, affd. 202 N. Y. 624.)
Accordingly, the proof warranted conviction of defendant, and his defense served no more than to create issues of fact.
Defendant, during the period in question, the month of October, 1945, held a New York City “ Massage operator ” license and was employed by one 0 ’Neil, a “ Registered Physiotherapist ” at a suite in the St. George Hotel, Brooklyn. During the course of four visits by Picard, defendant, for remuneration, applied to the upper part of Picard’s body pads or electrodes from three different machines, which resulted, as to two of them, in suffusing Picard’s body with warmth and, as to the others, in his experiencing a twitching sensation. If Picard is accredited, the proof is sufficient to warrant the conclusion that defendant was giving so-called “ physio-therapy ” treatments and not merely massages, as he cláimed. Picard testified that during the course only of the treatment resulting in the twitching sensation did defendant move the pads from one portion of the body to the other, whereas during the course of the other or heat treatments, the pads affixed remained stationary and defendant left the room. Picard also testified that defendant advised Picard to let him, defendant, know if the heat became too strong and also announced that he would give Picard “ diathermy treatment.”
So, too, a question of fact as to the guilt of defendant was presented with respect to his treatments of two female investigators. One testified that he” pressed the lower part of her back, asked if it hurt and, when she said it did, defendant advised that there was a bone out of place in the sacro region and suggested that she have X rays taken. The other witness testified that defendant pressed on her knee and examined both knee and shoulder and told her that he thought she had a “ bursitis ”. Both witnesses testified that defendant took their blood pressure. Denials of defendant and his claim that he restricted his activities to massages created no more than issues of fact. His further claim that he was legally entitled to take *530 blood pressure under the supervision of his employer, as conduct analogous to that of a nurse acting under direction of a physician, is without substance.
The judgment of conviction should be affirmed.
Lewis, P. J., Cabswell, Johnston and Adel, JJ., concur.
Judgment of the Court of Special Sessions of the City of New York, Borough of Brooklyn, convicting defendant of the crime of unlawful practice of medicine, unanimously affirmed.