George Tilzer, J.
Motion by plaintiff for summary judgment. Cross motion for judgment on the pleadings, pursuant to rules 106, 111 and 112 of the Rules of Civil Practice, as to the first and second causes of action, to strike out the reply, and for judgment on the pleadings upon the first and second counterclaims, or, in the alternative, for summary judgment on the action and counterclaims.
The action was commenced to annul the corporate charter of the defendant corporation upon the grounds that it has engaged and still continues to engage in the unlawful practice of optometry and ophthalmic dispensing; to enjoin said defendant from the continuance of such unlawful practice; and for the assessment of a fine pursuant to the provisions of section 1216 of the Civil Practice Act.
The defendant takes issue with many of the allegations stated in the complaint. However, sufficient pertinent facts are conceded upon which the court may determine whether, as a matter of law, the plaintiff is entitled to the relief sought.
The defendant maintains a store where it has a large stock of eyeglass frames and eyeglass lenses. It employs optometrists on a salary basis, whose functions are to examine the eyes of customers in order to determine whether such customers need eyeglasses at all, and, if so, what type of optical lens is required. In making the examination, the optometrist uses whatever optical instruments are necessary in the particular case, which instruments are owned by the defendant. The optometrist sets out the particular optical properties of the lens required on a document commonly called a ‘ ‘ prescription ’ ’. The customer is instructed to take such prescription to another part of the defendant’s establishment where he or she chooses a frame, after which a duly licensed ophthalmic dispenser, also employed by defendant on a salary basis, sees that lenses of optical qual *414 ities to conform to the optometrist’s prescription are inserted, and that the frame with the lenses so inserted is properly adapted to the customer’s face. The lenses of the required optical properties are cut to fit the shape of the frame. If the customer desires to purchase the frame or lens separately, he may do so.
It is conceded that the corporation is not a person to whom a license to practice optometry or ophthalmic dispensing can he issued under the laws of the State of New York.
The People claim that such acts of the defendant corporation, as hereinbefore stated, constitute the practice of optometry and ophthalmic dispensing.
The defendant started this particular business in 1914.
Prior to 1908, the business of providing appropriate optical aid to human vision was not regulated in any way. In that year the first statute requiring the licensing of optometrists was enacted (Public Health Law, art. XIII, L. 1908, ch. 460). In essence, it provided that every person desiring to commence or to continue the practice of optometry after January 1, 1909, except as. hereinafter provided, shall pass an examination and secure a certificate to practice. Exempted therefrom were persons who neither practiced nor professed to practice optometry, and those who sold spectacles, eyeglasses or lenses either on' prescription from physicians or from such duly qualified optometrists ; or as merchandise from permanently located and established places of business.
Such act curtailed the seller to a certain extent. Thereafter in 1928, sales were further curtailed under section 1432-a of the Education Law (now § 7109 of said law) as follows:
“ § 7109. Sales of eyeglasses, spectacles and lenses at retail. It shall be unlawful for any person, firm or corporation to sell, at retail, as merchandise, in any store or established place of business in the state, any spectacles, eyeglasses, or lenses for the correction of vision, unless a duly licensed physician or duly qualified optometrist,' licensed under part one of this article, be in charge of and in personal attendance at the booth, counter or place, where such articles are sold in such store or established place of business. This shall not prohibit, however, a duly certified ophthalmic dispenser from selling, providing, furnishing or adapting spectacles, eyeglasses or lenses only on prescription of physicians or duly qualified optometrists or from duplicating lenses'. The peddling of spectacles, eyeglasses or lenses' or the practicing of optometry or ophthalmic dispensing from house to house or on the streets or highways, by any person also shall be unlawful, notwithstanding any law providing *415 for licensing peddlers. This shall not prohibit, however, an optometrist or physician from attending, prescribing for and furnishing spectacles, eyeglasses or lenses, or a certified ophthalmic dispenser from furnishing or adapting spectacles, eyeglasses or lenses, to a person who by reason of illness, physical or mental infirmity is confined to his abode.”
The plaintiff stresses the words “as merchandise” in said section and contends that the sales are limited to “ ready made ” articles for which an optometrist is required to be physically present at the counter or booth during the sale to determine whether such “ ready made ” articles are sufficient to meet the needs of the customers.
Defendant urges that under said section it has a right to employ optometrists for the limited purpose of examining the eyes of its customers in connection with the sale of eyeglasses at retail, and for this purpose to exercise as much of their skill as is necessary to determine the need for eyeglasses and the prescription therefor.
It claims that it has no so-called ready-made spectacles or eyeglasses on display, but merely frames and lenses. It then endeavors to show that the intent of the statute was to assure that a customer was properly fitted with correct spectacles or eyeglasses and that since an examination would ordinarily be necessary and a prescription result, the law was to apply to made-to-order eyeglasses. Otherwise, it asserts, the purpose of the law would not be accomplished.
In recommending the amendment to the statute, now section 7109, the Education Department stated that the law was aimed at that more or less unscrupulous group of dealers who sold at retail spectacles and eyeglasses which were selected by their customers without adequate advice and which articles it was found often impaired or ruined the vision of the individuals so purchasing them.
In interpreting section 7109, the United States Supreme Court in Roschen v. Ward (279 U. S. 337, 339), states: “ "When the statute requires a physician or optometrist to be in charge of the place of sale and in personal attendance at it, obviously it means in charge of it by reason of and in the exercise of his professional capacity. If we assume that an examination of the eye is not required in every case, it plainly is the duty of the specialist to make up his mind whether one is necessary and, if he thinks it is necessary, to make it.”
Section 7109,1 conclude, was aimed at bargain counter reading’ glasses. The words “ as merchandise ”, appearing in the section have special meaning. They were no doubt taken from *416 that section of the Public Health Law of 1908 concerning those exempted from securing a certificate to practice optometry and were intended to distinguish between prescription glasses and glasses at hand. Thus, such new section is but another curtailment on the seller. Under said section a corporation is not only allowed to employ, but is required to use an optometrist. If such optometrist decides an examination is necessary, then it is his duty to make one (Roschen case, supra). This without question is the practice of optometry by an employee in behalf of the employer. It is something which was not previously required but is now specifically mandated by law.
Defendant’s argument that section 7109 sanctions its employment of optometrists as an incident to the sale of prescription glasses would be tenable if the law was aimed at other than ready-made glasses generally on the counter or sold by peddlers from house to house. As stated before, its intent was to prevent the sale at retail of eyeglasses as but another piece of counter merchandise. Section 7109 of the Education Law, the court finds, does not sanction the defendant’s employment of a licensed optometrist to the extent of permitting such optometrist to write prescriptions.
Such conclusion as to the restricted purpose and intent of section 7109 of the Education Law is not dispositive nevertheless of the basic issue presented. Although required to hire an optometrist in the sale of counter eyeglasses, may a corporation employ a licensed optometrist for the additional purpose of examining a customer and supplying a prescription, even though the Education Law prohibits a corporation from practicing optometry? Or, putting it another way, is such hiring an attempt to circumvent the law to enable the corporation to practice optometry indirectly which it cannot do directly? The issue is not the defendant’s right to practice optometry as if it were a licensee or its right to sell the totality of an optometrist’s services and functions. The question concerns the propriety of defendant’s employment of optometrists for the limited purpose of examining the eyes of its customers in connection with the sale of eyeglasses at retail, and for this purpose to utilize their skill to determine the need for glasses and the prescription to meet any such need.
The question of whether defendant’s limited activities constitute the practice of a profession restricted to natural persons has not been directly passed upon by our appellate courts. Foreign decisions, moreover, are in conflict. The right to engage in a lawful occupation is a fundamental, natural, essential, and inalienable right, one of the privileges of citizenship. Like other *417 rights equally fundamental, however, the right to engage in any legitimate trade, occupation, business, or profession, is not absolute, but is subject to a reasonable and necessary exercise of the regulatory powers of government in the public interest or welfare. The inalienable right of every citizen to follow the common industrial occupations of life does not extend to the pursuit of those professions which are subjected to supervision in the interest of the public welfare. As to what is a profession, the term connotes something more than mere proficiency in the performance of a task; it implies intellectual skill as contrasted with that used in an occupation for the production or sale of commodities. Originally, and historically, the word “ profession ” was applied only to law, medicine, and theology or divinity. From early times, moreover, the “learned professions ” were given “ exclusive rights and subjected to peculiar responsibilities.” The practice of law or of medicine was not a business open to all, but a privilege conferred upon the individual engaged therein. A corporation, it was held some 50 years ago, could not practice law or medicine, nor might it hire lawyers or doctors to act for it (Matter of Co-operative Law Co., 198 N. Y. 479, 484). As the applications of science and learning were extended to other fields, other vocations became known as “ professions ”. The liberalization of the term, however, to embrace chemists, editors, electricians, landscape architects, teachers, and shorthand reporters, among others, did not give to such “ professions ” exclusive rights nor subject them to peculiar responsibilities. If wrongs were practiced by individuals engaged in these callings, a State might not seek to remedy such evils by imposing unreasonable and unnecessary restraints upon them. If it was felt that only natural persons should be authorized to carry on one of these vocations, such a statute would have to bear “ a real and substantial relation to the public health, safety, morals, or some other phase of general welfare. * * * A state cannot, ‘ under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.’” (Liggett Co. v. Baldridge, 278 U. S. 105, 112-113.)
A case in point was before our Court of Appeals in People v. Dr. Scholl’s Foot Comfort Shops (277 N. Y. 151) where the defendant corporation was convicted of unlawfully practicing podiatry. There, Finch, J., writing for a unanimous court, said (p. 156): “It is contended, however, that the present statute, in providing that ‘ no person ’ shall practice chiropody without a license, bars the employment of licensed chiropodists by a *418 corporation; that a corporation is a person; that it cannot be licensed, and that, therefore, it cannot employ licensed practictioners. This construction involves an unjustifiable reading into the statute of terms which it does not contain. The statute does not mention corporations, and on its face has no applicability to corporations. Its obvious purpose is to protect the public health by prohibiting any one from treating or diagnosing foot ailments unless qualified, and by requiring such qualification to be shown by the possession of a license. Neither the context nor the object of the statute accords with the interpretation which would prevent corporations from employing licensed chiropodists.” After pointing out that attempts to confine ownership of drugstores to licensed pharmacists or to corporations whose stock was owned solely by licensed pharmacists were declared unconstitutional on the ground that such a requirement concerning ownership bore no real relationship to public health, and, therefore, was unreasonable (Liggett Co. v. Baldridge, supra), the reasoning of Judge Finch in the succeeding paragraph is particularly pertinent to the issue at hand (p. 157): “ The analogy between the profession of podiatry or chiropody and those of optometry and pharmacy, is a close one, and in the absence of a clear expression of intention we should not hold that licensed practitioners of one may not be employed by a corporation when the Legislature permits such employment of the others.”
After the decision in the Dr. Scholl’s case (supra), the Legislature in 1942 amended the law pertaining to podiatry and specifically prohibited the practice thereof by corporations with the provision that ‘ ‘ it shall be lawful for corporations organized and existing under the laws of the State of New York and which on or before the first day of March, nineteen hundred forty-two, were legally incorporated to practice podiatry to continue such practice through licensed and registered podiatrists ” (Education Law, § 1415-a, as added by L. 1942, ch. 785 [now Education Law, § 7009]; italics supplied). The Legislature, it must be observed, did not change or further limit the law with respect to employment by a corporation of optometrists or pharmacists. In fact, although some seven bills were introduced in the last three sessions of the Legislature to amend section 7109 of the Education Law to provide in essence that a corporation shall not practice optometry directly or through a licensed optometrist employed by it, all failed of passage.
A further illuminating decision as to the defendant’s right to sell eyeglasses and to employ optometrists for the purpose of examining the eyes of customers in conjunction with such *419 sales, is that of Matter of Dickson v. Flynn (246 App. Div. 341, affd. 273 N. Y. 72). In that case a certificate of incorporation which specifically provided for the right to employ optometrists to examine the eyes of customers in connection with the sale of eyeglasses at retail was submitted to the Secretary of State, who refused to accept it. An order of mandamus requiring the Secretary to file such certificate was affirmed by the Appellate Division in an opinion by Hill, P. J., which reads as follows (p. 344): “ The business in which the corporation is to engage is the sale of eyeglasses, spectacles, and lenses at retail. It does not become the practice of medicine or optometry because of the presence of a physician or optometrist. However, for the sake of the argument, if it be determined that the employment of a physician or optometrist amounts to a limited practice of medicine or optometry, petitioners are still entitled to the relief they seek. All persons had the right to sell eyeglasses before the enactment of article 54 of the Education Law. The Legislature by section 1432-a of that article has explicitly recognized and reaffirmed that right and, in addition, has required that the selling be surrounded by safeguards.”
In answer to the argument of the Attorney-General that the statute (Education Law, § 1432-a, now § 7109, quoted above) does not confer upon a corporation the authority to employ optometrists for the purpose of examining the eyes of customers in connection with the sale at retail of eyeglasses by the corporation, Judge Hill said (pp. 343-344): “ The statute was passed because the Legislature believed it an aid to public health and the courts have held it to be constitutional because of its relation to public health. The benefit was intended for the public not the optometrist. Otherwise the statute would have been unconstitutional. The Legislature did not deem it necessary to create a professional optometrist monopoly. Poverty or the lack of ability to pay has relation to public health and the Legislature may well have believed that competition between optometrist and store would make for more reasonable prices and profits, and that public health would be benefited thereby and could not suffer with an eye specialist present in the store at the place of sale. Unless some constitutional right is invaded, the clear intent of the Legislature should be given effect.”
The Court of Appeals, as noted, affirmed the mandamus order (273 N. Y. 72).
The plaintiff relies principally upon the decision of this court in Dickstein v. Optical Serv. (19 Misc 2d 495). In the Dickstein case the court was not asked to summarily enjoin and *420 annul the charter of a corporation. There was involved but a motion to dismiss a complaint under rule 106 of the Buies of Civil Practice, which motion was decided upon the ground that the complaint stated a cause of action for a declaratory judgment. Moreover, the complaint there alleged that the defendant, through its employees, provided the totality of the optometrist’s services and functions, including “ocular exercises” for the eyes of the customer. Thus the complaint averred that the optometrists employed by the corporation rendered services that had nothing whatever to do with the sale of eyeglasses. On the motion, of course, the court assumed the truth of the allegations of fact stated in the complaint. The court is advised that the Dickstein action was discontinued by stipulation between the parties.
Here we are not concerned with the sale of an optometrist’s functions, but with the sale of eyeglasses. The court, it must be emphasized, does not question that optometry is a personal profession and that a corporation cannot practice it. It must hold, nevertheless, that while section 7109 orders that a corporation must employ an optometrist in connection with the sale of self-prescription glasses, the law of this State does not confine an optometrist in the employ of a corporation to the simple determination as to whether the customer should select ready-made glasses. Such a limitation bears no relation to the protection of the health, welfare or safety of the public. The public requires the same protection whether the eyeglasses are ready-made or assembled to order, and the optometrist must exercise his art in both instances to the same extent and for the same purpose, that is, to examine eyes to determine the proper prescription required to correct the vision. The public is not better protected if the sale of eyeglasses' is confined to optometrists and denied to corporations which employe optometrists to perform exactly the same function in connection with the retail sale of eyeglasses that an optometrist would perform as a storekeeper (Matter of Dickson v. Flynn, supra, p. 344). The plaintiff may not, in the guise of subjecting a profession to its responsibilities, arbitrarily interfere with private business. As one may select the savings of having a prescription filled in a drug chain store, another may insist on the individual attention of a neighborhood pharmacist; so, too, if a member of the public desires the attention of an individual optometrist, that is still his privilege. The circumstance that the defendant has been successful in its business may be said to indicate that in fact the public is being better served. Indeed, although the corporate employment of optometrists has existed for over half a century *421 in this State, no instance has been cited where snch employment caused injury to the public. The court finds that the defendant is not prohibited from employing licensed optometrists for the limited purpose of examining the eyes of its customers in connection with the sale of eyeglasses at retail and for this purpose to utilize their skill to determine the need for glasses and the prescription to meet any such need.
What has been said with regard to the defendant’s employment of optometrists applies as well to the defendant’s hiring of ophthalmic dispensers. It was not until 1946 (L. 1946, eh. 697) that the Legislature enacted a statute requiring the certification of ophthalmic dispensers (now Education Law, § 7120 et seq.). In the defendant’s case, the optometrist employed by it writes a prescription, which is then given by the customer to' the ophthalmic dispenser, or optician, as he is popularly called, who reads it, selects the lens to conform with it, and adapts the eyeglasses to the customer’s face. Neither section 7109 of the Education Law nor any other statute of this State prohibits corporations from employing optometrists and opticians and utilizing their services in the manner of defendant. The primary purpose of the statutes passed with respect to optometrists and opticians was to insure that their skills would be rendered by competent and licensed persons and thereby to protect the public health. That purpose may be fully accomplished though the persons rendering the services are employed by a corporation.
In summary, defendant’s activities as enumerated above do not constitute the unlawful practice of optometry or ophthalmic dispensing. Accordingly, the plaintiff’s motion for summary judgment is denied. Such determination is limited, as we have said, to the propriety of defendant’s employment of optometrists and opticians as a necessary incident to the sale of eyeglasses at retail. The plaintiff further alleges, however, that the defendant represents to the public that it provides complete optical care. In this respect, issues of fact are raised as to whether the optometrists and opticians in the employ of defendant perform other functions which would constitute the practice of optometry and ophthalmic dispensing by the defendant. The presence of such issues precludes summary judgment in favor of the defendant and requires that the complaint and the reply be sustained. The defendant is entitled nevertheless to partial summary judgment, as indicated, to the extent of declaring that the employment of optometrists and opticians as a necessary incident to the sale of eyeglasses is not unlawful. Settle order.