John T. Casey, J.
The plaintiffs within the context of an action for a declaratory judgment have moved for a temporary injunction enjoining two of the defendants, the Commissioner of Health of the State of New York and the Acting Commissioner of the Department of Social Services of the State of New York from disbursing to corporate and commercial retail sellers of eyeglasses Medicaid payments for optometric examinations performed by salaried optometrists. The defendants have cross-moved for an order pursuant to CPLR 3211 (subd [a]) dismissing the complaint upon the ground that the plaintiffs lack standing to maintain the action, that they have failed to join a necessary party, and that the complaint fails to state a cause of action.
There are four plaintiffs: the New York State Optometric Association, Inc., an organization composed of and representing optometrists engaged in professional private practice; the Optometric Council of New York State, Inc., composed of and representing both professional private practice optometrists and optometrists that are employees of commercial optical establishments; two individuals who are residents and taxpayers of New York State, as well as being licensed optometrists.
*888 In their underlying action for a declaratory judgment, two plaintiffs seek, among other things, a judgment that the expenditure of public funds to corporate and commercial sellers of eyeglasses as Medicaid fees for the performance by their employees of optometric examinations is illegal. The plaintiffs claim those payments would be illegal because the components of an eye examination that qualifies for Medicaid payments include some tests that are beyond the authority of a salaried optometrist and as a result the corporate employer would be illegally engaging in the practice of optometry.
Section 7102 of the Education Law provides that only a person may practice optometry in the State of New York. It is well established that a corporation is not a person and may not, therefore, practice optometry within this State. (People v Sterling Opt. Co., 26 Misc 2d 412, affd 14 AD2d 838, affd 11 NY2d 970, herein cited as Sterling.) Subdivision 2 of section 7106 of the Education Law, however, authorizes a corporation to sell at retail eyeglasses or lenses for the correction of vision only, if it is on the prescription of a licensed physician or optometrist, and if a licensed physician, optometrist or opthalmic dispenser is in charge of and in personal attendance at the place of the sale. The predecessor of that subdivision, section 7109 of the Education Law, was interpreted as permitting a corporation to employ licensed optometrists for the "limited purpose of examining the eyes of its customers in connection with the sale of eyeglasses at retail and for this purpose to utilize their skill to determine the need for glasses and the prescription to meet any such need”. (Sterling, supra, p 421.)
On July 28, 1975 the Department of Health of the State of New York set forth the criteria for Medicaid reimbursement for a complete eye examination provided by qualified salaried optometrists. The minimum components of that examination included a gross visual fields test and a tonometry test (a test for glaucoma) for patients age 35 and over and for others where indicated.[1]
*889 The plaintiffs claim that the gross visual fields test and the tonometry test are not necessary components for the examination of eyes of customers to determine the need for eyeglasses and the prescription to meet any such need. Thus, the plaintiffs continue, those two tests are beyond the scope of the statutory exception contained in subdivision 2 of section 7106 of the Education Law. Consequently, according to the plaintiffs, the performance of those tests by salaried optometrists in the employ of a corporation would constitute the unlawful practice of optometry by a corporation.
The issue is whether the performance of a gross visual fields test and the tonometry test are within the scope of the permissible activities of a salaried optometrist employed by a corporation. The predecessor of section 7106 was passed as an aid to public health. The benefit thereof was intended not for the optometrist but for the public. Poverty or the lack of ability to pay has relation to the public health, and the Legislature may well have believed that competition between the professional optometrist and the store would make for more reasonable prices and profits, and that public health would be benefited thereby and could not suffer with an eye specialist present in the store at the place of sale. (Dickson v Flynn, 246 App Div 341, 343-344, affd 273 NY 72.)
In the instant case if the court were to agree with the plaintiffs, the examinations performed by the salaried optometrist would be less than the components of a minimum for a proper eye examination according to the regulations of the Department of Social Services (18 NYCRR 505.6 [a] [3]; 505.6 [a] [5]). Furthermore, the Medicaid funds would be unavailable for payment of examinations performed by salaried optometrists.
It seems to me that the legislative intent embodied in section 7106, and its predecessor, was to provide the same type of services available at both the corporate optometrist and the independent practitioner insofar as the sale of eyeglasses and the examination of eyes incident thereto is concerned. Accordingly, the performance by a salaried optometrist of the tests necessary to qualify such examination for Medicaid payments *890 are within the statutory exception contained in subdivision 2 of section 7106. The motion for an injunction and other relief is denied. The cross motion is granted.

. The test is identical to the test set forth in the Rules and Regulations of the Department of Social Services in 18 NYCRR 505.6(a)(5) which provides
"An eye examination provided by an optometrist to be accepted as the basis for prescription of eyeglasses shall include, as a minimum, the following components:
"(i) case history;
"(ii) internal and external eye examination;
“(iii) vision correction;
"(a) objective,
*889 "(b) subjective (distance and near)
"(iv) binocular coordination testing (distance and near);
"(v) gross visual fields;
"(vi) tonometry for patients age 35 and over and for others where indicated.”