21380.   CAMPBELL, Commissioner of Agriculture v.
BENTON *et al.*

Argued September 12, 1961—Decided October 16, 1961—
Rehearing denied October 24, 1961.

*Eugene Cook, Attorney-General, G. Hughel Harrison, Assistant Attorney-General, Benjamin L. Johnson,* for plaintiff in error.

*Charles E. Rozier, Schreiber & Rozier, Marshall Ewing, Edwin G. Barham, Eberhardt, Franklin, Barham & Coleman, Larry E. Pedrick, Bennett, Pedrick & Bennett, Davis, Davis & McClure, W. T. Davis, William T. Darby,* contra.

Candler, Justice.   On December 30, 1959, Washington Hog Market, Inc., obtained a livestock dealer's or broker's license from Honorable Phil Campbell as Georgia's Commissioner of Agriculture.   Pursuant to the requirements of an act which the legislature passed in 1956 (Ga. L. 1956, p. 501; *Code Ann. Supp.* § 62-1901), it executed and deposited with him a dealer's bond in the penal amount of $15,000 in which he was named as trustee and which Travelers Indemnity Company signed as surety.   In compliance with the provisions of the statute under which it was so executed and deposited with the Commissioner, its condition was such that, "If the said principal shall pay, when due, to the person or persons entitled thereto the purchase price for all livestock purchased by the principal then this bond shall be null and void; otherwise to remain in full force and virtue."   Such bond and the act under which it was given provide that the trustee may maintain an action thereon in his own name, the recovery to be made for the use of the person or persons damaged.   And the bond also contains a condition which the statute makes no provision for whereby any person damaged by the breach of any condition thereof may maintain an action on such bond in his own name to recover his damage, after giving written notice to the named trustee and both the princi-

pal and the surety waive every defense, if any there might be, based on the fact that any person damaged or in whose name the suit is brought is not a party or a privy to the bond. Early in 1960, W. L. Benton and R. L. McDilda, trading as Toombs County Stockyard; and L. C. Pruitt and W. H. Inman, trading as Waycross Livestock Market, notified the Commissioner in writing that they had not been paid for certain livestock which they had sold to Washington Hog Market, Inc. The former's claim was for $7,950.32 and the latter's for $9,501.15. The Commissioner notified the Travelers Indemnity Company of these claims, but neither claim was paid. On May 2 and May 4, 1960, the claimants filed separate suits in the City Court of Waycross against Washington Hog Market, Inc., and Travelers Indemnity Company to recover the respective amount due each, alleging that they had a right to do so under the provisions of the bond which they (the defendants) executed and deposited with the Commissioner as trustee. On July 13, 1960, Phil Campbell, as Commissioner of Agriculture of the State of Georgia, filed an equitable suit in the Superior Court of Ware County against Washington Hog Market, Inc., Travelers Indemnity Company, several named persons who had filed claims with him against Washington Hog Market, Inc., including W. L. Benton and R. L. McDilda, t/a Toombs County Stockyard and L. C. Pruitt, and W. H. Inmant, t/a Waycross Livestock Market, as well as all other unknown persons to whom Washington Hog Market, Inc., was indebted for livestock. His petition, as amended, alleges that claims aggregating $141,936.02 had been filed with him by persons who had sold livestock to the defendant Washington Hog Market, Inc., and Travelers Indemnity Company for $15,000—the penal amount of the bond deposited with him as trustee; for a decree directing disbursement of the $15,000 among the known and unknown creditors of the defendant Washington Hog Market, Inc., for livestock it had purchased from them; and for a temporary and permanent injunction against the defendants W. L. Benton and R. L. McDilda, t/a Toombs County Stockyard and L. C. Pruitt and W. H. Inman, t/a Waycross Livestock Market, to prohibit them from further prosecuting their aforementioned pending suits in the City Court

of Waycross. The defendant Travelers Indemnity Company answered the petition, admitted its liability on the bond of $15,000 and offered to pay that amount into the registry of the court. The defendants W. L. Benton and R. L. McDilda, t/a Toombs County Stockyard, and L. C. Pruitt and W. H. Inman, t/a Waycross Livestock Market, interposed separate but identical demurrers to the amended petition, on the ground that it alleged no fact or facts which would authorize a court of equity to enjoin them from further prosecuting their pending suits filed by them in the City Court of Waycross, under what they contend to be a valid condition of the bond which the Washington Hog Market, Inc., and Travelers Indemnity Company executed and deposited with Georgia's Commissioner of Agriculture. Their demurrers were sustained, and the plaintiff excepted to those judgments. *Held*:

1. The plaintiff Commissioner's suit in this case was brought on a bond which is by section 1 (c) of the act of 1956 (Ga. L. 1956, p. 501) defined to "mean a written instrument issued or executed by a bonding, surety or insurance company licensed to do business in Georgia guaranteeing that the person bonded shall faithfully fulfill the terms of the contract of purchases and guarantee the payment of the purchase price of all livestock purchased by him, made payable to the Commissioner of Agriculture for the benefit of persons sustaining loss resulting from the non-payment of the purchase price or the failure to fulfill the terms of the contract of purchase." In the instant case there is no contention by anyone that the bond here sued on is not so conditioned. The defendant Travelers Indemnity Company by its answer admits this and has offered to pay the full penal amount of the bond, namely $15,000, into the registry of the court for the benefit of those entitled to receive it. Under the terms of the bond thus required by the statute which named the Commissioner as trustee, it obligated him where there was a default in its provisions to collect the bond or any necessary part thereof to pay the claim of any person from whom the principal had purchased livestock and failed to pay for the same; or where the aggregate claims of several similarly situated exceeded the amount of the bond, to collect it in full and disburse the proceeds pro rata among such several claimants.

2. But the demurring defendants take the position and argue that the bond here involved contains another condition, namely, one which also gives them the right as persons to whom the principal was indebted for livestock to sue on this bond, as they have done in their own names and individually recover the amount the principal is due each of them for livestock they separately sold to it. This position is in our opinion settled adversely to their contention by numerous authorities. The bond here being dealt with is purely and strictly a statutory one—a bond which a livestock dealer or broker is required by law to execute and deposit with Georgia's Commissioner of Agriculture before he can obtain a license or permit to deal in livestock under the provisions of the aforementioned 1956 act. In 11 C.J.S. 420, § 40 (e), the author states the rule applicable to the instant case to be as follows: "The law at the time of the execution of a statutory bond is a part of it; if it gives to the bond a certain legal effect, it is as much a part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. . . Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it; but such rule applies only to matters of substance and not to mere matters of form." The rule just stated has been approved and followed in *Justices of Inferior Court v. Wynn,* Dudley 22; *Talmadge v. General Cas. Co. of America,* 88 Ga. App. 234 (76 SE2d 562); *St. Paul-Mercury Indemnity Co. v. Koppers Co.,* 95 Ga. App. 687 (99 SE2d 275); and in several other cases from other jurisdictions as cited by Judge Townsend who prepared and delivered the opinion for the Court of Appeals in *Talmadge v. General Cas. Co. of America,* supra. See also *Pasler v. Maryland Cas. Co.,* 97 Ga. App. 263, 266 (103 SE2d 90), where it was held:

"The general rule is that where the statute requires an instrument to be drawn, and the instrument as executed for the purpose of complying with statutory requirements does not in all respects, meet them, 'whatever is included in the bond which is not thereby required must be read out, and whatever is not expressed and ought to have been incorporated must be read in, so as to conform to the requirements of the law.' *Collins v. U.S.F. & G. Co.*, 72 Ga. App. 875, 880 (45 SE2d 474)." The *Collins* case, supra, was prepared by Judge Sutton who was subsequently a member of this court.

3. For the reasons stated in the two preceding divisions, the trial judge erred in sustaining the demurrers to the amended petition by Benton and McDilda, t/a Toombs County Stockyard; and Pruitt and Inman, t/a Waycross Livestock Market, and in dismissing the suit as to them. This being true, all subsequent action taken in their pending suits in the City Court of Waycross is nugatory.

*Judgments reversed. All the Justices concur.*