HARRY W. CYPHERS *v.* W. ELLERY ALLYN, INSURANCE COMMISSIONER

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 5—decided November 8, 1955

*Joseph Koletsky,* for the plaintiff.

*Thomas J. Conroy,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the defendant.

BALDWIN, J. In this action against the defendant insurance commissioner seeking a declaratory judg-

ment, the plaintiff has attacked the constitutionality of legislation which requires the licensing of real estate brokers and salesmen. The case has been reserved for the advice of this court upon questions set forth in the stipulation for reservation.[1]

Effective July 1, 1953, the General Assembly enacted "An Act concerning the Supervision, Regulation and Licensing of Real Estate Salesmen and Brokers." Public Acts 1953, No. 410; Cum. Sup. 1953, §§ 1783c-1803c. This legislation requires that any person who desires to engage in the business of "real

---

[1] "(1) Is the Act constitutional in that it requires in Section 7(a) (Sec. 1789c) that 'each applicant for a license as a real estate broker shall post with the commissioner a bond in favor of the state with surety in the amount of two thousand five hundred dollars.'?

"(2) Is the Act constitutional in that it restricts in Section 7(b) (Sec. 1789c) that 'No bond shall be accepted for filing unless it is with a surety company authorized to do business in this state.'?

"(3) Is the Act constitutional in that it requires in Section 9(d) (Sec. 1791c) that 'No license shall be issued to any applicant until such applicant shall post with the commissioner the bond required by section 7 of this act.'?

"(4) Is the Act constitutional in that it provides in Section 2 (Sec. 1784c) that 'This act shall not apply to . . . service rendered by any attorney at law in the performance of his duties as such attorney at law.'?

"(5) Does the Act require in Section 5 (Sec. 1787c), particularly attorneys at law retained to collect rent for the use of real estate, or to negotiate a sale of real estate or to negotiate a loan secured by a mortgage as set out in Section 1 (1783c); to make application in writing for a license and to undergo a personal written examination as required by Section 6 (1788c) and to secure and pay for a license and a surety bond required by the Act, and if it does so require, is it constitutional?

"(6) Are the following sections of the Act, Section 1 (1783c); Section 2 (1784c); Section 3 (1785c); Section 4 (1786c); Section 5 (1787c); Section 6 (1788c); Section 7(a)(b) (1789c); Section 8 (1790c); Section 9(d) (1791c); Section 15 (1797c); Section 19 (1801c); Section 20 (1802c); Section 21 (1803c), unconstitutional under Article First, Section 1, 9, 10 and 12; Articles Second and Third of the Constitution of the State of Connecticut and Article XIV, Section 1 of the Amendments to the Constitution of the United States?"

estate broker" or "real estate salesman," as those terms are defined in the act, shall obtain a license from the insurance commissioner. Cum. Sup. 1953, § 1785c. This license shall issue upon proof of the good reputation of the applicant for honesty, truthfulness and fair dealing, the satisfactory completion, on the part of those not actually engaged in the real estate business on July 1, 1953, of a personal written examination as to competency, and the payment of a fee. §§ 1788c, 1786c. The licenses are renewable annually upon the payment of an additional fee. §§ 1788c, 1790c. Prerequisite to the issuance of a license is the posting by the applicant of a bond with the commissioner in the amount of $2500 for a broker's license and $1000 for a salesman's license. § 1789c. The only bond which the commissioner is empowered to accept is a so-called surety company bond.

On the date this legislation became effective, and for some time prior thereto, the plaintiff was a real estate broker. Under protest, and reserving his right to attack the constitutionality of the act, he made application for a license, posted the necessary surety company bond and was granted a license. He took this course in order to continue his business as a broker without subjecting himself to the penalties of the act. In his brief, he anticipates a claim that he cannot seek and obtain a license under the act and at the same time attack its constitutionality. Whether there is a valid reason for refusing to entertain this action for a declaratory judgment need not be analyzed. The reservation presents questions of such public interest with respect to real estate brokers and agents that, in our discretion, we have decided to pass upon them. *Ruppert* v. *Liquor Control Commission*, 138 Conn. 669, 673, 88 A.2d 388.

The plaintiff challenges the constitutionality of this legislation upon a number of specified grounds. These can be stated in summary as coming within the due process provision of § 1 of the fourteenth amendment to the federal constitution and §§ 1 and 12 of article first of the constitution of this state. We have held that these provisions of the federal and state constitutions have the same meaning and impose similar constitutional limitations. *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 105, 90 A.2d 862; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 195, 132 A. 561. Statutes in other states requiring a license to engage in the business of real estate broker or salesman have generally been held not to be violative of the equal protection and due process clauses of the federal constitution. They have been sustained as a lawful exercise of the police power of the state in the interest of the public welfare. *Roman* v. *Lobe,* 243 N.Y. 51, 54, 152 N.E. 461; *State* v. *Polakow's Realty Experts, Inc.,* 243 Ala. 441, 448, 10 So. 2d 461; note, 39 A.L.R.2d 606, 608; 12 C.J.S. 14, § 8; 8 Am. Jur. 994, § 8. We conclude that the licensing of real estate brokers and salesmen is within the legitimate exercise of the police power when done in a reasonable manner.

The plaintiff's attack upon the constitutionality of the provision requiring that a surety company bond be filed before a license can be issued presents the question upon which the decision of the case hinges. The plaintiff claims that this provision is an illegal delegation of power, to be exercised at the whim or caprice of a corporation which is beyond the control of the law. If every surety company permitted to transact business in this state should refuse, for any reason, to issue a bond, the applicant could not obtain a license. For these reasons, the

plaintiff asserts that the provision is arbitrary and unreasonable and, consequently, illegal. When the Connecticut statute was enacted, thirty-eight states and the District of Columbia had legislation requiring the licensing of real estate brokers and salesmen. Semenow, Questions & Answers on Real Estate (2d Ed.) p. 265. In sixteen of these the posting of a bond was prerequisite to licensure.[2] Id., pp. 476-481. The licensing provisions furnish supervision and regulation of the real estate business and make possible the elimination of the incompetent and unscrupulous agent. The bond provides a means of financial satisfaction for the damage sustained by the victim of the dishonest operator, who frequently has no tangible assets. This is cogent reasoning. It is sufficient to justify as a proper exercise of the police power of the state the requirement that a bond be posted. A majority of the states wherein the statutes make the filing of a bond a prerequisite to licensure require a bond with corporate surety.[3] The decisive question in the case at bar is whether the

[2] Alabama, Arizona, Arkansas, Georgia, Idaho, Kentucky, Louisiana, Maryland, Montana, Nevada, New Mexico, Ohio, Oklahoma, Utah, Virginia, and the District of Columbia.

[3] The following require the filing of a corporate surety bond: ALABAMA. Code Ann. tit. 46, § 311(5) (Sup. 1953); ARIZONA. Sess. Laws 1954, c. 97, § 2; ARKANSAS. Stat. Ann. § 71-1305 (Sup. 1951); DISTRICT OF COLUMBIA. Code Ann. § 45-1405 (1951); IDAHO. Code Ann. § 54-2010 (b) (1947); MARYLAND. Ann. Code art. 56, § 224 (b) (Sup. 1955); NEVADA. Comp. Laws § 6396.12 (Sup. 1949); NEW MEXICO. Stat. Ann. § 67-24-10 (1953); VIRGINIA. Code Ann. § 54-768 (1950).

States in which the bond need not be a corporate surety bond: GEORGIA. Sess. Laws, Nov.-Dec. 1953, p. 203; KENTUCKY. Rev. Stat. § 324.060 (1953); LOUISIANA. Rev. Stat. § 37-1447 (1950); MONTANA. Sess. Laws 1953, c. 150, § 1; OHIO. Rev. Code Ann. § 4735.12 (Baldwin 1953) (see Ops. Att'y Gen. p. 113 [1937], opining that a regulation requiring a surety company bond would violate the Ohio constitution); OKLAHOMA. Stat. tit. 59, § 848 (Sup. 1953); UTAH. Code Ann. § 61-2-6 (b) (1953).

bond provision of our statute is unconstitutional, and if it is, whether it nullifies the entire statute.

Nearly the precise question which we have to answer was decided under the Kentucky statute. That statute permitted the applicant to deposit either cash in the amount of the bond or a corporate surety bond. The claim was that the exclusion of sureties other than corporate was discriminatory and illegal. The Court of Appeals of that state said: "The argument is that there is no reasonable basis for requiring a corporate surety and not permitting individual sureties. We think there is a reasonable basis for the requirement. A bond with corporate surety is in the nature of an insurance contract, and the liability of the compensated surety on such a bond is controlled by some different considerations than in the case of a gratuitous or voluntary individual surety. Young Men's Christian Association's Assignee v. Indemnity Ins. Co., 244 Ky. 473, 51 S.W.2d 463; 44 C.J.S., Insurance, § 13, page 477. We think the legislature was justified in requiring the kind of surety that would furnish the greatest protection to the public." *Sims* v. *Reeves,* 261 S.W.2d 812, 814 (Ky.) ; see also *McDonald* v. *Oklahoma Real Estate Commission,* 268 P.2d 263, 264 (Okla.).

The legislative department is the judge, within reasonable limits, of what the public welfare requires, and the wisdom of its legislation is not the concern of the courts. *State* v. *Bassett,* 100 Conn. 430, 432, 123 A. 842; *New Haven Water Co.* v. *New Haven,* 106 Conn. 562, 577, 139 A. 99; *State* v. *Nelson,* 126 Conn. 412, 426, 11 A.2d 856. "Courts will not hold laws, ordinances or regulations adopted under sanction of law to be unconstitutional unless they are clearly unreasonable, destructive or confiscatory." *State* v. *Hillman,* 110 Conn. 92, 106, 147 A.

294, and cases cited. The state may exact a bond or other security as a regulatory measure to protect the public from danger, fraud or dishonesty incident to a particular business. *Gospel Army* v. *Los Angeles,* 27 Cal. 2d 232, 248, 163 P.2d 704; 33 Am. Jur. 374, § 54; see Cum. Sup. 1953, § 2120c. Legislation has been sustained which predicated the issuance of a license upon the posting of a surety company bond guaranteeing the faithful observance of the law or the filing of a certificate of insurance to respond in damages. *In re Cardinal,* 170 Cal. 519, 526, 150 P. 348; *People* v. *Henry,* 131 Cal. App. 82, 95, 21 P.2d 672; *Sverkerson* v. *Minneapolis,* 204 Minn. 388, 390, 283 N.W. 555; *State* v. *Seattle Taxicab & Transfer Co.,* 90 Wash. 416, 426, 156 P. 837; *Continental Baking Co.* v. *Woodring,* 286 U.S. 352, 365, 52 S. Ct. 595, 76 L. Ed. 1155; *Hicklin* v. *Coney,* 290 U.S. 169, 171, 54 S. Ct. 142, 78 L. Ed. 247.

Section 1793c of our statute holds the licensee to standards of honest and fair dealing under penalty of the suspension or revocation of his license. Section 1789c gives to any person aggrieved by a violation of the act by the licensee a right of action upon the bond. A real estate broker or salesman occupies a position of superiority and influence which invites the trust and confidence of those who deal with him. He is often entrusted with substantial sums of his client's money. *Harper* v. *Adametz,* 142 Conn. 218, 225, 113 A.2d 136.[4] It is for the legislature to determine in the first instance what measures are needed in the interest of the public safety and wel-

---

[4] The following cases deal with dishonest action on the part of the real estate brokers: *Rathbun* v. *McLay,* 76 Conn. 308, 56 A. 511; *Mucke* v. *Solomon,* 79 Conn. 297, 64 A. 738; *Schleifenbaum* v. *Rundbaken,* 81 Conn. 623, 71 A. 899; *Herzog* v. *Cooke,* 99 Conn. 366, 121 A. 868; *Resnik* v. *Morganstern,* 100 Conn. 38, 122 A. 910; *Kurtz* v. *Farrington,* 104 Conn. 257, 132 A. 540.

fare, and courts are bound to assume that in enacting legislation it acted upon adequate information and proper motives to accomplish a worthy object. *Amsel* v. *Brooks,* 141 Conn. 288, 295, 106 A.2d 152. It could well be that the legislature considered a corporate surety bond more adequate and more certain protection to the public than some other form of surety bond. There is nothing before us to show that such a form of bond is difficult or impossible to secure or that it has been denied in a worthy case. It is a matter of common knowledge that many companies are vying with one another for so-called surety bond business. Under these circumstances we cannot say that the provision of the statute relating to the filing of a surety company bond as a prerequisite to the issuance of a license constitutes an unwarranted delegation of power or is arbitrary, discriminatory and unreasonable.

The plaintiff claims that the provision of the statute pertaining to services rendered by attorneys at law relating to real estate matters lacks clarity and precision and is therefore void for want of statutory specificity. *State* v. *Van Keegan,* 132 Conn. 33, 38, 42 A.2d 352. Admittedly, the plaintiff is not an attorney at law. He cannot be harmed by the application of the provision which he assails and therefore cannot question the constitutionality of the statute because of the alleged invalidity of this particular section. *State* v. *Donahue,* 141 Conn. 656, 665, 109 A.2d 364; *Carroll* v. *Socony-Vacuum Oil Co.,* 136 Conn. 49, 59, 68 A.2d 299; *Rindge* v. *Holbrook,* 111 Conn. 72, 76, 149 A. 231.

Our answers to the questions propounded in the reservation are: (1) The provisions relating to the posting of a surety company bond (questions 1, 2 and 3) are valid; (2) we decline to answer questions

708

4 and 5; (3) we decline to answer question 6 in so far as it relates to the provision pertaining to attorneys; as to the remaining provisions, our answer to question 6 is No.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.