CONNECTICUT CHIROPODY SOCIETY, INC., ET AL. *v.*
ALAN E. MURRAY ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued June 5—decided July 7, 1959

*Charles G. Albom,* with whom, on the brief, were
*Leon M. Gabriel* and *Edward M. Reynolds,* for the
appellants (plaintiffs).

*Gregory C. Willis,* with whom, on the brief, were
*Allan R. Johnson* and *Howard W. Benedict,* for the
appellees (defendants).

KING, J. The named plaintiff is a corporation without capital stock, and all its members, seven of whom joined as individual parties plaintiff, are duly licensed active practitioners of chiropody under what is now chapter 375 of the Revision of 1958. Since there have been no statutory changes material to the decision of this case since its institution, for convenience statutory references will be made to that revision. The basic claim of the plaintiffs is that the defendant Murray Space Shoe Corporation and four individual defendants who are stockholders or agents of that corporation are carrying on a business at least some of the activities of which constitute the practice of chiropody. The plaintiffs sought a declaratory judgment defining the activities complained of as the practice of chiropody and injunctive relief against their continuance. See cases such as *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 673, 179 A. 195. The defendants make no claim that they are licensed chiropodists or entitled to practice chiropody. Thus the real issue is whether their activities constitute the practice of chiropody within the definition of § 20-50 of the 1958 Revision.[1] The court found that the plaintiffs had failed to prove

[1] "Sec. 20-50. CHIROPODY OR PODIATRY DEFINED. Chiropody, or podiatry, is defined to be the diagnosis, prevention and treatment of foot ailments; the practice of minor surgery upon the feet, including all structures of the phalanges but limited to those structures of foot superficial to the inner layer of the fascia of the foot; the dressing, padding and strapping of the feet; the making of models of the feet and the palliative and mechanical treatment of functional and structural ailments of the feet, not including the amputation of the leg, foot or toes or the treatment of systemic diseases of the bones, ligaments or muscles of the feet or any other part of the body. The words 'chiropody' and 'podiatry,' for the purposes of this chapter, shall have the same meaning and effect, and the words 'chiropodist' and 'podiatrist,' for the purposes of this chapter, shall have the same meaning and effect."

that the activities of the defendants complained of constituted the practice of chiropody, and from this judgment the plaintiffs have appealed. Besides denying the allegations of the complaint, the defendants, in a special defense, alleged that their activities came expressly within the first proviso of § 20-65.[2]

The material facts as we view the case are simple. The defendant corporation, hereinafter referred to as the defendant, manufactured and sold custom shoes. A plaster cast of each of the customer's feet would be made; from this a model or last of each foot would be obtained; and a shoe would then be fashioned over that model or last. The result, at least theoretically, would be an almost perfectly fitted custom shoe for each foot. The defendant required that the model either be made in its own plant or by a designated representative, usually a chiropodist, who had had instructions in the making of models. These instructions were given by the defendant in a booklet which it issued. The basic claim of the defendant was that it was nothing more nor less than a maker of custom shoes; that these shoes were custom fitted over models which were cast as hereinbefore described, instead of over wooden lasts made from minute measurements of the customer's feet, the usual method of making custom shoes; and that the shoes have no palliative or corrective effect except to the extent that such an effect would necessarily flow from a custom shoe of practically perfect fit.

---

[2] Section 20-65, after prescribing a penalty for the practice of chiropody without a license, closes with the following provisos: ". . . provided nothing herein contained shall be construed to prohibit or restrict the sale or fitting of corrective, orthopedic or arch-supporting shoes or commercial foot appliances by retail merchants and provided no such retail merchant shall be permitted to practice chiropody without being licensed for such practice."

Since the defendant made lasts which in effect were models of the feet, at first blush it would appear, as the plaintiffs claim, that it was engaged in the practice of chiropody as defined in § 20-50. If, however, the statute were given such a construction it would, if constitutional, prohibit all true custom shoemaking unless the shoemaker employed a chiropodist who was able to, and would, make a last of each of a customer's feet. Whether a custom last is made of wood from precise measurements of the customer's feet or from an impression of each foot taken under the defendant's process, such a last would necessarily be a model of a foot within the literal meaning of the phrase in the statute. In Connecticut, the practice of chiropody was open to anyone prior to the enactment of chapter 229 of the Public Acts of 1915. While § 1 of that chapter required a license for the practice of chiropody after January 1, 1916, § 6 provided that no examination would be required for the licensing of any person actually engaged in the practice of chiropody prior to January 1, 1915. The practice of chiropody by unlicensed persons was prohibited by § 14 of the 1915 act; by § 2970 of the Revision of 1918; and by § 2880 of the Revision of 1930. But no attempt was made to define the vital phrase, practice of chiropody, until the enactment of § 1188c of the 1935 Cumulative Supplement. That section is similar in its language to the present § 20-50 except that "plaster" preceded and modified the word "models" and the clause "as taught and practiced in the schools of chiropody recognized by the examining board" modified the phrase respecting treatment. This limiting language was omitted in § 1023e of the 1939 Cumulative Supplement, which was in essence the same as the present statute.

A statute which restricts the conduct of an occupation which was lawful at common law should be construed with reasonable strictness. *People* v. *Dr. Scholl's Foot Comfort Shops, Inc.,* 277 N.Y. 151, 13 N.E.2d 750; *Hart* v. *Board of Examiners of Embalmers,* 129 Conn. 128, 132, 26 A.2d 780. "In the interpretation of the language of a legislative enactment, the question is as to the expressed intention, that is, the intention of the legislative body 'as found from the words employed to make it manifest.'" *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785. Legislative intent is found not in what the legislature meant to say but in the meaning of what it did say. *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154. In this connection, punctuation is to be considered, especially where, as here, it has remained unchanged through a number of amendments. *Tuohey* v. *Martinjak,* 119 Conn. 500, 504, 177 A. 721. Section 20-50 describes four general courses of conduct as constituting the practice of chiropody, and these are separated by semicolons. The fourth, which alone concerns us here, is not merely the making of models of the feet but the making of models of the feet coupled with the palliative and mechanical treatment of functional and structural ailments of the feet. There is no punctuation, and the conjunctive "and" is employed after the phrase "the making of models of the feet." See *Bania* v. *New Hartford,* 138 Conn. 172, 179, 83 A.2d 165; *State* v. *Sul,* 146 Conn. 78, 88, 147 A.2d 686. All this fortifies a construction that the statute prohibits the making of models of the feet only in connection with the palliative and mechanical treatment of functional and structural ailments of the feet, and that "treatment" goes beyond the mere supplying of an extremely well-fitting cus-

tom shoe. It may be, as the plaintiffs claim, that a person would not pay $70 for a pair of custom shoes if he was not having discomfort from his feet. But if this discomfort can be relieved or corrected by merely wearing a shoe custom fitted to the wearer's foot, it would not be a "treatment" of a foot disorder within the meaning of the statute. That this is all the plaintiffs succeeded in proving the defendants did is the fair import of the finding, construed as a whole.

The plaintiffs make much of the possible dangers of burning incident to the making of plaster casts of the feet, and the desirability, if not necessity, for a caster to have considerable knowledge of medicine and the anatomy of the foot. Such policy considerations are foreign to the ascertainment of the expressed legislative intent, which is the basic question here.

The view which we take of the statute makes it unnecessary to consider the ruling of the court that even if the activities of the defendant constituted the practice of chiropody as defined in § 20-50, they were removed from that category by the exculpatory proviso in § 20-65. The court was not in error in deciding that the plaintiffs had failed to prove that the defendants were engaged in the practice of chiropody in violation of § 20-50. This is dispositive of this appeal.

There is no error.

In this opinion the other judges concurred.

MURPHY, J. (concurring). I concur. My only reason for writing this concurrence is to point out the absurdity of the plaintiffs' contention that the making of models of the feet, separate and apart from the treatment of ailments of the feet, constitutes the

practice of chiropody; if that were so, every sculptor or other artist who makes models of the feet would be practicing chiropody and subject to criminal prosecution.