THE METROPOLITAN CASUALTY COMPANY OF NEW YORK *v.* GORDON BILLINGS ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 8—decided June 11, 1963

*Adrian W. Maher,* with whom, on the brief, was *James J. Maher,* for the appellants (defendants Billings).

*Philip B. Lyster,* for the appellee (plaintiff).

BALDWIN, C. J. This case was tried, pursuant to the parties' agreement in open court, on issues

joined on statements of claim filed by the defendants Gordon and Helene Billings and the defendant Saul Feldman in an action of interpleader which was brought by the plaintiff and later withdrawn. The defendants sought to recover on a surety bond issued by the plaintiff on February 25, 1958. Since the governing statutes have not been amended in any way significant to this case, current citations will be employed. The plaintiff as surety and Henry Perrault as principal posted the bond in the amount of $2500 with the insurance commissioner, who is charged by statute with the issuance of licenses to real estate brokers and salesmen. General Statutes § 20-312. The bond was given, pursuant to the requirements of General Statutes § 20-315, to enable Perrault, who paid a premium of $17.50, to secure a real estate broker's license under chapter 392 of the General Statutes. By a letter dated February 6, 1959, the plaintiff renewed the bond as of February 25, 1959, for an additional three-year period for a premium of $43.75. On February 10 and 11, 1959, Perrault, acting as a real estate broker, received from the defendants Billings $5000, which he converted to his own use. On May 5, 1959, acting as a real estate broker, he received from the Billings' $15,300, which he also converted to his own use. The trial court concluded that the bond created a continuous rather than an annually cumulative obligation and gave the Billings' judgment for $2500 with interest from June 10, 1960, the date of demand on the surety—a total of $2754.17. Gordon and Helene Billings, hereinafter referred to as the defendants, have appealed. The trial court rendered judgment in favor of the plaintiff as to the defendant Feldman, and he has not appealed.

The defendants claim that they are not only en-

titled to recover the full amount of the bond for Perrault's default of February 10 and 11, 1959, but also an additional sum in the full amount of the bond for Perrault's defalcation of May 5, 1959. No person can act as a real estate broker without a license issued by the insurance commissioner. General Statutes § 20-312. Licenses expire on September 30 following the date of their issuance; at "the time of application for a broker's license and for every annual renewal thereof" a fee must be paid to the commissioner. General Statutes § 20-314. Each applicant for a real estate broker's license is required to post with the commissioner a surety bond in the amount of $2500 "conditioned that the principal named therein will not do any of the acts meriting suspension or revocation of his license under the provisions" of the laws regulating real estate brokers and salesmen. General Statutes § 20-315. The commissioner, after following the procedure outlined in the statute, may suspend or revoke the license of a real estate broker for his failure to remit or account for moneys which belong to others and come into his possession. General Statutes § 20-320 (5). "No license shall be issued to any applicant until such applicant posts with the commissioner the bond required . . . ." General Statutes § 20-316 (d).

The defendants argue that since the bond was required as a condition precedent to the issuance of a license or any renewal thereof, and since the license was issued and was renewable annually, the legislature intended that the bond would create an annually cumulative liability. Conversely, the plaintiff claims that the express language of the bond created a continuous, noncumulative liability and that the commissioner so construed and ac-

cepted it and deemed it a compliance with the statute. Therefore, the plaintiff says that its liability is limited to $2500.

When a bond is issued to comply with a statutory condition precedent to any transaction with a public authority, the bond and the statute requiring it are to be construed together; the language of the bond, frequently denominated a "statutory bond," is to be interpreted in the light of the statute and with a view to effectuating the legislative intent. *New Britain Lumber Co.* v. *American Surety Co.,* 113 Conn. 1, 5, 154 A. 147, and cases cited; 50 Am. Jur., Suretyship, § 33. The provisions of the statute will be read into the bond because, the statute having made the bond necessary, the parties are deemed to have had the statute in contemplation when the bond was executed. Ibid. The bond in the instant case expressly refers to the statutes relating to the licensing of real estate brokers and purports to comply with them. Section 20-316 (d) of the General Statutes specifically requires that a bond be posted before any license is issued to an applicant and thus makes the posting of the bond a condition precedent to the issuance of the license. Therefore, the plaintiff's liability on the bond must be determined by construing the bond and the statutes together. *Commercial Standard Ins. Co.* v. *West,* 74 Ariz. 359, 361, 249 P.2d 830; *Campbell* v. *Benton,* 217 Ga. 368, 371, 122 S.E.2d 223; *Jaeger Mfg. Co.* v. *Massachusetts Bonding & Ins. Co.,* 229 Iowa 158, 161, 294 N.W. 268; *Sun Ins. Co.* v. *Aetna Ins. Co.,* 169 Neb. 94, 110, 98 N.W.2d 692.

In *Cyphers* v. *Allyn,* 142 Conn. 699, 704, 118 A.2d 318, we said: "The licensing provisions [General Statutes, c. 392] furnish supervision and regulation of the real estate business and make possible the

elimination of the incompetent and unscrupulous agent. The bond provides a means of financial satisfaction for the damage sustained by the victim of the dishonest operator, who frequently has no tangible assets." See 5 H.R. Proc., Pt. 6, 1953 Sess., p. 2390. We also pointed out in *Cyphers* v. *Allyn,* supra, 705, that a bond with corporate surety is in the nature of an insurance contract, and the liability of the compensated surety on such a bond is controlled by considerations different from those in the case of a gratuitous or voluntary individual surety. See *Young Men's Christian Association's Assignee* v. *Indemnity Ins. Co.,* 244 Ky. 473, 477, 51 S.W.2d 463; 44 C.J.S., Insurance, § 13. Chapter 392 is remedial in nature and for that reason is to be liberally construed in order to accomplish its purpose. *Dempsey* v. *Tynan,* 143 Conn. 202, 208, 120 A.2d 700; *Grievance Committee* v. *Payne,* 128 Conn. 325, 331, 22 A.2d 623.

Words in statutes are to be construed according to their commonly approved usage. General Statutes § 1-1; *Spellacy* v. *American Life Ins. Assn.,* 144 Conn. 346, 354, 131 A.2d 834. The term "bond" commonly connotes an instrument under seal, as is the bond posted in this case. Any liability accruing on a contract under seal is actionable within seventeen years from the date of its accrual. General Statutes § 52-573. If the bond was a continuing one for a liability in the aggregate of $2500, any defalcation of that sum or more by a real estate broker could possibly deplete his coverage for as long as seventeen years. The legislature could hardly have intended such inadequate protection for the public. When the statutory provisions requiring the posting of a bond by each applicant for a license (General Statutes § 20-315), making the posting of a

bond a condition precedent to the issuance of any license (General Statutes § 20-316), and making it necessary to renew annually any license issued (General Statutes § 20-314) are read together, as they must be, the legislative intent that the bond carry an annually cumulative liability is obvious. Any other interpretation would defeat the purpose of this remedial legislation. *Jaeger Mfg. Co.* v. *Massachusetts Bonding & Ins. Co.*, supra, 164.

The bond in the instant case is dated February 25, 1958, and recites that the principal, Perrault, had made application to the commissioner for a real estate broker's license as defined in what is now chapter 392 of the General Statutes. Presumably, Perrault's license was issued as of that date. A premium of $17.50 was paid. His license was renewable on October 1 following. The condition of the bond purported to make it continuous in form, terminable on thirty days' notice to the commissioner and the principal of the bond, and limited to a coverage of $2500 in the aggregate.[1] On Febru-

---

[1] "THE CONDITION OF THIS OBLIGATION IS SUCH THAT WHEREAS, the Principal has made application to the Insurance Commissioner of the State of Connecticut for a license to engage in the business of a Real Estate Broker as defined in Chapter 237a, 1953 Supplement to the General Statutes and amendments thereto [General Statutes, c. 392].

"Now THEREFORE, if the said Insurance Commissioner shall grant the application and issue the license above referred to and the Principal will not do any of the acts meriting suspension or revocation of his license under the provisions of said Chapter 237a, then this obligation shall be null and void; otherwise to remain in full force and effect, subject however to the following conditions:

"No. 1. That this bond shall be continuous in form; the liability of the Surety hereunder may however be terminated by giving thirty days' written notice thereof, by registered or certified mail, to the Principal and to the Insurance Commissioner; and upon giving such notice, the Surety shall be discharged from all liability under this bond for any act or omission of the Principal occurring

ary 6, 1959, the plaintiff by letter gave notice that it was renewing the bond for a three-year term beginning February 25, 1959, for a premium of $43.75. By this letter the plaintiff in effect terminated the bond as one continuing beyond its anniversary date, February 25, 1959, and required the payment of another premium, thereby creating a new obligation for a new and definite term beginning on that date. *United States* v. *American Surety Co.*, 172 F.2d 135, 138 (2d Cir.); note, 7 A.L.R.2d 946; 44 C.J.S., Insurance, § 283. Perrault's defalcation on February 10 and 11, 1959, occurred during the first year of the term of the bond. His default of May 5, 1959, occurred during the first year of the term of the renewed and modified bond. The statute does not specify that a bond shall be posted at each annual renewal date of a license. It states only that each applicant shall post a bond with the commissioner. General Statutes § 20-315. It lies within the discretion of the commissioner to determine by regulation, under General Statutes § 20-328, whether the annual term of the bond shall coincide with the annual term of the license. There may be sound reasons, in the administering of the act, why it should not. The statute requires only that a bond be posted which covers any violation of the statute by a practicing real estate broker. We conclude that the pro-

---

after the expiration of thirty days from the date of service of such notice.

"No. 2. That any person aggrieved by an act of the principal named in this bond in violation of the provisions of said Chapter 237a, may proceed against the Principal or Surety herein, or both, to recover damages.

"No. 3. That nothing contained herein shall be construed to impose upon the Surety any greater liability in the aggregate than the total amount of this bond, provided the Surety shall promptly, upon receipt of notice of any claim or payment hereon notify the Insurance Commissioner of same by registered mail."

visions of the bond here which are inconsistent with the statutes as we have interpreted them are void and that the bond imposes on the plaintiff an annually cumulative liability.

There is error, the judgment as to the defendants Billings only is set aside, and as to them the case is remanded with direction to render judgment in their favor in the amount of $5000, with interest from June 10, 1960.

In this opinion the other judges concurred.