**Reuben H. GIESE, Verna M. Giese and Sam Giese, Plaintiffs and Appellants,**

v.

**Ed ENGELHARDT, P. W. Blank, Dale Hewson, Matt G. Koffler, H. E. Sondreal, Ray Lorenz, George Letvin, John Zoller, Gilbert Saxowsky, State Acceptance Corporation, the Liberty National Bank and Trust Company, Paul McCann Company, a partnership, Paul McCann and Company, a partnership, Orser, Olson, Wolfe & St. Peter, a partnership, and St. Paul Fire & Marine Insurance Company, a corporation, Defendants and Respondents.**

Civ. No. 8555.

Supreme Court of North Dakota.

Feb. 18, 1970.

William Lince, Elgin, and Freed, Dynes & Malloy, Dickinson, for plaintiffs and appellants.

Zuger, Bucklin, Kelsch & Zuger, Bismarck, for defendant and respondent, St. Paul Fire & Marine Insurance Co.

Donald R. Holloway, North Dakota Securities Commissioner, Bismarck, amicus curiae.

A. C. BAKKEN, District Judge.

By Amended Complaint dated January 31, 1968, the Plaintiffs, Reuben H. Giese, Verna M. Giese and Sam Giese seek recovery of $10,200.00 plus interest from the Defendants Ed Engelhardt, P. W. Blank, Dale Hewson, Matt G. Koffler, H. E. Sondreal, Ray Lorenz, George Letvin, John Zoller, Gilbert Saxowsky, State Acceptance Corporation, the Liberty National Bank and Trust Company, Paul McCann Company, a partnership, Paul McCann and Company, a partnership, Orser, Olson, Wolfe & St. Peter, a partnership and St. Paul Fire & Marine Insurance Company, a corporation, for alleged misrepresentation and fraud by said Defendants, except for the Liberty National Bank and Trust Company and the St. Paul Fire & Marine Insurance Company, in sales of State Acceptance Corporation debentures, stock certificates and promissory notes to the Plaintiffs during the years 1963, 1964, 1965 and 1966. The Plaintiffs allege in paragraph XII of said amended complaint: "That the Defendant St. Paul Fire & Marine Insurance Company did, on September 12, 1962, issue Surety Bond No. 400 AL 9530 in the amount of $5,000.00 guaranteeing that the Defendant State Acceptance Corporation and its agents, employees and salesmen would comply with all of the provisions of the Securities Act of the State of North Dakota. That said surety bond, which has been renewed annually, is presently on file in the office of the North Dakota Securities Commissioner and is in full force and effect during each of the years that the sales to the Plaintiffs herein complained of were completed. That the Defendant State Acceptance Corporation and its agents, employees and salesmen did violate various provisions of the Securities Act of North Dakota as herein alleged, thereby damaging the Plaintiffs in the amount of their respective purchases as above set forth. Therefore the Defendant insurance company is responsible for and is indebted to the Plaintiffs herein to the extent of $5,000.00 for each of the years during which these transactions were completed, or a total sum of $10,200.00."

The Defendant St. Paul Fire and Marine Company, hereinafter called St. Paul Company answered by stating that "On or before September 12, 1962, the State of

North Dakota, without participation of the St. Paul Company, drafted a bond form. The St. Paul Company did on September 12, 1962, execute as surety, a bond, number 400 AL 9530, with the State Acceptance Corporation as principal and the State of North Dakota as obligee. The bond was in the amount of $5,000.00 and was executed on the form prepared by the State of North Dakota. The bond was continued in force until August 25, 1967."

The St. Paul Company further counterclaimed for interpleader stating that "Lawsuits have been started, by the following named Plaintiffs, making claims on the same bond: Reuben H. Giese, Verna M. Giese, Sam Giese; Dan Giese, Etta Giese; Emil Fuchs, Mabel Fuchs; Henry Weidner, Hertha Weidner; Jack Mittlesladt, Margaret Mittlesladt; Charles W. Schollmeyer, Angeletta D. Schollmeyer; Ed Heise and Edward Heise. The total amount demanded by said Plaintiffs is $56,550.00. The total amount of the bond is only $5,000.00. It is apparent that the Plaintiffs are claiming more than is available * * *. WHEREFORE, Defendant St. Paul Company demands: (1) That the Court order interpleader of claimants to the fund; and * * * (4) That the Court permit the Defendant St. Paul Company to pay to the Clerk of this Court the sum of $5,000.00 (representing the amount asserted by it to be the bond penalty which is the subject matter of the various claims) there to abide the judgment of the Court; and (5) That the Court determine the terms of the bond and whether the St. Paul Company is correct in its contention that $5,000.00 is the maximum penalty of the bond; * * *"

The case was determined by the District Court of Burleigh County, the Honorable Clifford Jansonius, Judge presiding, on a limited issue by virtue of an order for interpleader which came about as a result of the counterclaim for interpleader by the St. Paul Company. Said order provides that there will be a "trial and hearing as to the amount of bond penalty and all issues of law and fact concerning the amount of the bond penalty".

Said order was made pursuant to Rule 42(b) of the N.D. Rules Civ.Proc. which provides:

"SEPARATE TRIALS. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, and may direct a final judgment in accordance with the provisions of Rule 54(b)."

Rule 54(b) of the N.D. Rules Civ.Proc. provides:

"JUDGMENT UPON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

The District Court in its conclusions of law stated that "Defendant St. Paul Fire and Marine Insurance Company is entitled to a judgment in its favor adjudging that the total amount of the bond penalty on all claims which could be presented is a maximum total penalty of $5,000.00."

In accordance with Rule 54(b) the District Court in its direction for entry of

judgment stated: "This Court expressly finds that there is no just reason for delay for entry of judgment as to the issues tried. regarding the amount of the bond penalty and hereby expressly directs the entry of such judgment in accordance with the above."

First to be considered is the trial court's order for a separate trial of the question as to the amount of liability of the St. Paul Company under the surety bond. Was a separate trial in furtherance of convenience as required by Rule 42(b) and, if so, was the final judgment directed in accordance with the provisions of Rule 54(b)?

■ The order of the trial court for a separate trial as to one or more but fewer than all issues or claims will be set aside, only if an abuse of discretion is shown.

■ Other rules of civil procedure liberally provide for joinder of claims, parties and actions, and Rule 42(b) is intended to counterbalance them by permitting a separate trial of issues which cannot well be tried together, or which can be conveniently and quickly determined before trial of the other issues which is the situation in this case.

■ Rule 54(b) of the North Dakota Rules of Civil Procedure forbids an appeal to the Supreme Court where less than all of the claims, of a multiple claim action, have been adjudicated, unless the trial court has, before the taking of the appeal, made an " * * * express determination that there is no just reason for delay and * * * an express direction for the entry of judgment." Kack v. Kack, 142 N.W.2d 754, 761 (N.D.1966); see 3 Barron & Holtzoff § 1193. The purpose of the rule is to discourage piecemeal disposal of multiple-claim litigation. Berg v. Kremers, 154 N.W.2d 911, 913 (N.D.1967). Without a determination and direction there is no final judgment. Without a final judgment an appeal may not be taken. Perdue v. Knudson, 154 N.W.2d 908, 911 (N.D.1967).

■ The trial court complied with Rule 54(b) by making in its order for judgment an express determination that there is no just reason for delay and an express direction for the entry of judgment.

The decision of the trial court in making the determination and direction required by Rule 54(b) will be set aside only if an abuse of discretion is shown. Mitzel v. Schatz, 167 N.W.2d 519, 526 (N.D.1968).

■ In view of the number of potential claimants as indicated by the twelve interpleaders asserting claims aggregating $50,650.00, the trial court did not abuse its discretion under Rules 42(b) and 54(b) by ordering a separate trial of the issue as to whether the maximum liability of the St. Paul Company under the surety bond is $5,000 or $25,000.

The remaining question for determination on this appeal is whether the liability of the St. Paul Company under Indemnity Bond No. 400 AL 9530 is limited to $5,000, the face amount of said bond, or whether such liability is $5,000 during each of five annual periods during which the premium therefor was paid.

The bond, in its provisions pertinent to the issue, states:

"Know all men by these presents that State Acceptance Corporation * * * as principal and St. Paul Fire and Marine Insurance Company * * * as surety are by this obligation held and firmly bound unto the State of North Dakota for the use, benefit and protection of investors, purchasers and all persons in the sum of $5,000.00 good and lawful money * * *

"This bond shall be in full force and effect for a year from the 12th day of September, 1962 and shall continue for each successive year until canceled by the surety or the North Dakota Securities Commissioner."

The statutory provisions requiring securities dealers to register annually and de-

posit a guarantee fund with the State Treasurer were enacted as Chapter 182, Sections 3 and 12, Session Laws of 1923, and now constitute Section 10–04–10 of the North Dakota Century Code.

Section 10–04–10, N.D.C.C., contains the following:

"No dealer or salesman shall offer for sale or sell any securities within or from this state, except in transactions exempt under Section 10–04–06, unless he is registered as a dealer or salesman pursuant to the provisions of this section.

"1. *Dealers.* Application for registration as a dealer may be made by any person. * * *

* * * * * *

"The commissioner shall require an indemnity bond or a deposit of cash or other properties approved by the commissioner running to the state of North Dakota conditioned for the faithful compliance by the dealer, his agents, and his salesmen *with all the provisions of this law* and for the faithful performance and payment of all obligations of the dealer and his agents and salesmen.

"The bond or deposit shall be of such type as may be approved by the commissioner *and shall be in such an amount as he shall deem necessary to protect purchasers when there is taken into consideration the volume of business engaged in by the applicant and the number of salesmen employed by the applicant.* Any such bond shall have as surety thereon a surety company authorized to do business in this state. When the commissioner has registered an applicant as a dealer he shall notify the applicant of such registration.

* * * * * *

"5. *Record and renewal of registrations.* The names and addresses of all persons who have been registered as dealers, salesmen, or investment counsels, and all orders with respect thereto, shall be recorded in a register of dealers, salesmen, and investment counsels in the office of the commissioner. *Every registration under this section shall expire on the first day of May in each year.* * * *" [Emphasis added.]

The only amendment of the above quoted provisions of Section 10–04–10 was enacted subsequent to the years to which this case pertains.

The trial court placed considerable emphasis in its memorandum decision upon a letter written by the Securities Commissioner to the St. Paul Company under date of August 27, 1959. This letter was received in evidence by the trial court as defendant's Exhibit B and is set forth in the trial court's memorandum opinion as follows:

"Thank you for your letter of Aug. 24, 1959.

"In answer to your question regarding the liability under the bond, it is my opinion that bond covers only the amount for which it is executed. The words "for the use, benefit and protection of investors, purchasers and all persons interested" are not qualified by additional words, such as "each and every" and the like. Further, "in the sum of ————", would apparently be construed by the courts to mean aggregate sum. Apparently there is no North Dakota case law construing the phrases as set forth in the bond. However, it is my opinion that the Court would not hold to a successive recovery bond unless that intention was clearly set forth."

We do not have before us the letter of inquiry dated Aug. 24, 1959 from the St. Paul Company to the Securities Commissioner. Therefore, we cannot determine precisely whether the inquiry was as to the bond limit in regard to individual claimants, or in regard to whether the bond limit was continuous or cumulative annually.

The Securities Commissioner's letter states, "the words 'for the use, benefit and protection of investors, purchasers and all persons interested' are not qualified by additional words, such as 'each and every' and the like." It then concludes by stating, "However, it is my opinion that the court would not hold to a successive recovery bond unless that intention was clearly set forth." While the letter may be somewhat ambiguous the logical interpretation thereof appears to be that the Securities Commissioner took the position, quite properly, that in each annual premium period the total bond liability could not exceed the face amount of the bond regardless of the number of claimants.

■ The trial court looked to this letter as an administrative interpretation of a statute of doubtful meaning and cited Beck v. Workmen's Compenstion Bureau, 141 N.W.2d 784, 788 (N.D.1966) as follows:

"This court has repeatedly held that 'in construing a statute of doubtful meaning the court will give weight to the long-continued practical construction placed thereon by the officers charged with the duty of executing and applying the statute.' State v. Equitable Life Assurance Society, 68 N.D. 641, 673, 282 N.W. 411."

It is undisputed that this doctrine has been adopted in North Dakota, but it is not applicable to the facts of this case.

■ It is important here to note also that all state officers must look to the attorney general as chief law officer of the state for opinions on all legal questions relating to their duties as such officers.

"The attorney general shall:
\* \* \*
(6). Consult with and advise the governor and all other state officers, and when requested give written opinions on all legal or constitutional questions relating to the duties of such officers respectively;" Section 54–12–01(6), N.D.C.C.

"Reading this statute [Section 54–12–01] we can reach no other conclusion than that the legislature, thus imposing these duties upon the attorney general, made him the chief law officer of the state—the responsible legal adviser for the state auditor as well as for the other state officers, whose opinions shall guide these officers until superseded by judicial decision; \* \* \*" State ex rel. Johnson v. Baker, 74 N.D. 244, 21 N.W. 2d 355 (N.D.1945).

■ In addition to acting without first obtaining a written opinion from the attorney general, the Securities Commissioner in his letter of August 27, 1959, was attempting to interpret a bond or contract rather than a statute and irrespective of Section 54–12–01 there can be no binding effect from such interpretation no matter how long-continued if not in compliance with the terms of the statute.

■ It is clear from reviewing some of the cases in this area that executive construction is relied on only if the court finds that the statute is ambiguous or doubtful as to its meaning.

"\* \* \* there is no basis for executive construction of the powers granted the Board since executive construction is restricted to cases in which the meaning of the statute is really doubtful." Convis v. State, 104 N.W.2d 1, 5 (N.D. 1960), citing State v. Stockwell, 23 N.D. 70, 134 N.W. 767, 778 (1912).

■ The authorities hereafter referred to establish that a contract, executed by a public agency pursuant to statute, embody and contain the terms of the statute and, if the contract and statute conflict, the latter

must govern. The obligations on a bond required by statute are measured by the particular statute requiring the bond, together with other applicable statutes. In other words, the provisions of the statute are read into the bond.

■ The law of land in existence at time contract is entered into forms part of contract as if its provisions were expressly incorporated therein. Ireland's Lumber Yard v. Progressive Contractors, Inc., 122 N.W.2d 554 (N.D.1963).

Generally, contracting parties enter into their contract in reference to existing law, and all relevant existing law at the time of the contract becomes a part of the contract and must be read into it. Lillethun v. Tri-County Elec. Co-op., Inc., 152 N.W.2d 147 (N.D.1967).

The law existing at the time a contract is entered into, and applicable thereto, forms a part of the contract the same as if it were incorporated therein. *Id.*

■ Where the state sets up an annual licensing system, and requires a bond for the protection of the public, the bonds must be construed as giving protection for their full face amount for each year that they are in force, and any provision in the bond attempting to limit this liability is a nullity. Royal Indemnity Company of New York v. Business Factors, Inc. (1964), 96 Ariz. 165, 393 P.2d 261, and cases cited.

■ The statute does not specify that a bond shall be posted at each annual renewal of the dealer's registration. It states only that each dealer in securities shall post a bond or deposit with the Commissioner. Section 10–04–10(1). It lies within the discretion of the Commissioner to determine by regulation, under Section 10–04–10(5), whether the annual term of the bond shall coincide with the annual term of the registration. There may be sound reasons, in the administering of the act, why it should not. The statute requires only that a bond or deposit be posted as the Commissioner shall deem necessary to protect purchasers of securities in the event of violations of law by a registered securities dealer, in connection with the sale of securities.

The statute may be complied with either by furnishing annually a new bond or by annual renewal of an existing bond. The fact that State Acceptance Corporation, the bankrupt dealer, chose to continue to do business with its original bonding company does not decrease the protection to the public for each year as required by statute.

The St. Paul Company relies on Leonard v. Aetna Cas. & Surety Co. (4 Cir., 1935), 80 F.2d 205, and United States v. Maryland Cas. Co. (D.C.1955), 129 F.Supp. 45. These cases hold that a surety bond which is to exist for an indefinite period of time will generally be held to continuous liability. However, these cases pertain to bonds issued for the protection of single specific obligees, and are, therefore, distinguishable from the case at hand which pertains to a surety bond required by statute for the protection of the public.

Regarding the provision in Section 10–04–10(1) permitting a deposit in cash we consider as good logic the statement found in United States v. American Surety Company of New York, 2 Cir., 172 F.2d 135, 7 A.L.R.2d 940, certiorari denied 337 U.S. 930, 69 S.Ct. 1494, 93 L.Ed. 1737, as follows:

> "Whatever may turn out to be the proper interpretation of the deposit provision, we think it cannot be held to limit the force of the requirement for an annual additional premium.
>
> \*   \*   \*   \*   \*   \*
>
> "The substantial and controlling point is that an annual premium was required and paid in the expectation of the obvious protection which that should afford."

The legislative intent is expressed in Section 10–04–10 of the North Dakota Century Code as follows:

"The bond or deposit shall be of such type as may be approved by the commissioner *and shall be in such an amount as he shall deem necessary to protect purchasers when there is taken into consideration the volume of business engaged in by the applicant* and the number of salesmen employed by the applicant." [Emphasis added.]

On the precise point Chief Justice Baldwin said in Metropolitan Casualty Co. of New York v. Billings (1963), 150 Conn. 603, 192 A.2d 541: "The legislature could hardly have intended such inadequate protection for the public. When the statutory provisions requiring the posting of a bond by each applicant for a license [Section 10–04–10(1)], making posting of a bond a condition precedent of the issuance of any license [Section 10–04–10(1)·], and making it necessary to renew annually any license issued [Section 10–04–10(5)] are read together, as they must be, the legislative intent that the bond carry an annually cumulative liability is obvious. Any other interpretation would defeat the purpose of this remedial legislation."

The surety, St. Paul Fire and Marine Insurance Company, is liable under said bond for a maximum of $5,000 in each of the five separate annual periods for which it charged and received an appropriate premium.

For reasons stated in this opinion, the judgment of the district court is reversed.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

WILLIAM L. PAULSON, J., deeming himself disqualified, did not participate; the Honorable A. C. BAKKEN, one of the judges of the First Judicial District, sitting in his stead.