GERARD R. COLLI ET AL. *v.* REAL ESTATE COMMISSION

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued June 3—decision released September 2, 1975

*James A. Wade,* with whom was *Robert A. Greenspon,* for the appellants (plaintiffs).

*Richard M. Sheridan,* assistant attorney general, with whom were *William N. Kleinman,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant).

BOGDANSKI, J.  The plaintiffs, licensed real estate brokers, appealed to the Court of Common Pleas from the defendant's decision that the plaintiffs had violated § 20-328-3 of the Regulations of Connecticut State Agencies which prohibits any real estate licensee from negotiating the sale or exchange of real property with an owner known to have an outstanding "exclusive listing contract" with another licensee covering that same property.  The state real estate commission found that such violation by the plaintiffs was not in the best interests of the public or the real estate industry and issued a warning to the plaintiffs that any similar violations in the future would be grounds for the suspension or revocation of their licenses.  The trial court dismissed the appeal.  From that judgment the plaintiffs have appealed to this court.

The material facts are not in dispute.  On April 17, 1973, Mrs. Josepha Wuyts executed an "exclusive agency listing" agreement with Leighton Realty for the sale of her home located in Ledyard, Connecticut.  During the term of an "exclusive agency listing" agreement, the contracting real estate agent is the only agent having a right to sell the prop-

erty. The owner, however, retains the right to sell without incurring a commission. In contrast, an "exclusive right to sell listing" confers upon the agent the exclusive right to sell with the owner retaining no such right. On June 21, 1973, the plaintiff Gerard R. Colli approached Mrs. Wuyts and asked for a listing of her property with the plaintiff Trend Realty Company of which Colli was president. Mrs. Wuyts told him of her "exclusive agency listing" agreement with Leighton Realty. Thereoupon, Colli began negotiating with her for the outright purchase of the property for Trend Realty. On June 23, 1973, Colli executed a purchase agreement with her for the property. On June 29, 1973, prior to obtaining title from Mrs. Wuyts, Trend Realty entered into an agreement for the sale of the same premises to Gary Chann. Shortly thereafter, Leighton Realty filed a formal complaint with the defendant commission.

From the foregoing facts, the trial court concluded that the commission did not err in finding that the plaintiffs had violated § 20-328-3 of the regulations[1] and in issuing its warning. On appeal to this court the plaintiffs have assigned error in the trial court's refusal to find that the commission lacked jurisdiction over the plaintiffs and the subject transaction.

In order to appeal from a decision or order of the commission, a party must be aggrieved by that decision or order. General Statutes § 20-322. In

---

[1] Section 20-328-3 of the Regulations of Connecticut State Agencies concerning the "Conduct of Real Estate Brokers and Salesmen" states: "No licensee shall negotiate or attempt to negotiate the sale, exchange or lease of any real property directly with an owner or lessor knowing that such owner or lessor has an outstanding exclusive listing contract with another licensee covering the same property."

this case the plaintiffs alleged aggrievement; the trial court, however, did not make any findings on that issue, and the parties have not raised it in the appeal to this court. "In the absence of a finding, we turn to the memorandum of decision to ascertain the legal conclusions upon which the court based its judgment. *State ex rel. Haverback* v. *Thomson,* 134 Conn. 288, 291, 57 A.2d 259." *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 140, 139 A.2d 601. An examination of the memorandum of decision shows that the case was actually tried on the theory that the plaintiffs were aggrieved persons. The order of the commission recited that the plaintiffs had violated the regulations; that they had engaged in activities that were not in the best interests of the public or of the real estate commission; and that similar activities in the future would be grounds for the suspension of their licenses. That order directly affected the plaintiffs' reputation in the real estate industry and in the community, and resulted in specific personal injury to them. See, generally, *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 482–83, 338 A.2d 497. Since the record in this case is sufficient to establish aggrievement, we may properly overlook the lack of a special finding and dispose of the appeal as it has been presented to us by the parties. *Baccante* v. *Zoning Board of Appeals,* 153 Conn. 44, 46, 212 A.2d 411; *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 667, 154 A.2d 520.

The plaintiffs' claim regarding the commission's lack of jurisdiction over them is based upon their interpretation of §§ 20-311 and 20-320 of chapter 392 of the General Statutes. Section 20-320 provides in pertinent part: "The commission may . . . investigate the actions of any real estate broker or real

estate salesman, or any person who assumes to act in either of such capacities within this state, and shall have the power temporarily to suspend or permanently to revoke any license issued under the provisions of this chapter at any time when . . . it finds . . . that the licensee, in performing or attempting to perform any of the actions enumerated in section 20-311, is guilty of any of the following: . . . (12) a violation of any provision of this chapter or of any regulation issued by the commission." Section 20-311 defines a real estate broker as "any person, partnership, association or corporation which, for *another* and for a *fee,* commission or other valuable consideration, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of, an estate or interest in real estate . . . ." (Emphasis added.) The plaintiffs assert that those statutes authorize the commission to revoke licenses for violations of the regulations only if such violations occur in "performing or attempting to perform" activities enumerated in § 20-311, and that since Colli acted not for another and not for a fee but as a principal during the negotiations for the purchase of Mrs. Wuyts' property, the commission lacked jurisdiction over the transaction.

The scope of the commission's jurisdiction is dependent upon the wording used in the statutes. See *Johnson* v. *Mortenson,* 110 Conn. 221, 225, 147 A. 705. The authority of the commission to suspend or revoke licenses is primarily derived from § 20-320.[2] The plaintiffs argue that the statutes

[2] See also § 20-323 of the General Statutes which requires the commission to revoke licenses upon the licensee's conviction of certain crimes. The crimes, however, rather than being specifically delineated, are described as "any of the offenses enumerated in subsection (8) of section 20-320."

must be construed strictly, because they restrict the conduct of an occupation which was lawful at common law. *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617, 153 A.2d 412; *Hart* v. *Board of Examiners of Embalmers,* 129 Conn. 128, 132, 26 A.2d 780. The defendant contends that the statute should be liberally construed to accomplish its purposes because this court has already held that chapter 392 entitled Real Estate Brokers and Salesmen is remedial in nature. *Metropolitan Casualty Co.* v. *Billings,* 150 Conn. 603, 608, 192 A.2d 541. Whatever the characterization of the statutes may be, effect must be given to the legislative intent as expressed by the wording used in the statute. *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 98, 291 A.2d 721; *Lutkevicz* v. *Brennan,* 128 Conn. 651, 653, 25 A.2d 66. If the language of the statute is clear and unambiguous, we cannot subject its meaning to modification by construction. *Bahre* v. *Hogbloom,* 162 Conn. 549, 553, 295 A.2d 547; *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265.

The language of § 20-320 is unambiguous. The defendant commission may investigate the actions of "any real estate broker." Since both plaintiffs were "licensed brokers," the commission had authority to investigate the transaction involving Mrs. Wuyts. The statute further provides that the commission may suspend or revoke licenses when it finds that the licensee, "in performing or attempting to perform any of the actions enumerated in section 20-311," is guilty of certain listed offenses. That language, however, confers no authority upon the commission to revoke or suspend licenses unless the listed offenses occurred while

the broker was engaged in or was attempting to engage in conduct described in § 20-311 of the General Statutes.

Section 20-311 in turn defines a real estate broker by describing the activities in which a broker would reasonably be expected to engage. The common denominator applicable to each of the described activities is that the activity must be engaged in "for another and for a fee, commission or other valuable consideration." A person negotiating a purchase for himself or on behalf of his corporation is not included within this definition. When §§ 20-311 and 20-320 are read together, the plain import of the language is that the commission has jurisdiction to revoke a broker's license pursuant to § 20-320 only if he is found guilty of a listed offense which was perpetrated while he was performing or attempting to perform "for another and for a fee," that is, only while acting in his capacity as a broker.

There is no question that the licensing provisions of chapter 392 are designed to allow " 'supervision and regulation of the real estate business and make possible the elimination of the incompetent and unscrupulous agent.' " *Metropolitan Casualty Co.* v. *Billings,* supra, 607–608, quoting from *Cyphers* v. *Allyn,* 142 Conn. 699, 704, 118 A.2d 318; see 5 H.R. Proc., 1953 Sess., pt. 6, pp. 2381–90. The commission maintains that it is contrary to these purposes to regard § 20-311 as imposing restrictions on the commission's authority; that the legislature intended that the defendant be vested with liberal discretion to ensure the integrity of the real estate profession; and that once a broker has been licensed, he should not be permitted to avoid the clear

impact of the commission's regulations merely by designating himself as a principal instead of a broker.

The intention of the legislature is found not in what it meant to say, but in the meaning of what it did say. *Hartford Electric Light Co.* v. *Water Resources Commission,* supra, 98; *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506. It is not the function of the court to speculate upon any supposed intention not appropriately expressed in the act itself. *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 48, 301 A.2d 244. It may very well be that the legislature intended to confer jurisdiction upon the commission to revoke licenses for reasons unrelated to brokerage activities, but that intention has not been expressed in the language of the statutes. We are not permitted to supply a statutory omission merely because we feel there is good reason to do so. The commission's remedy lies with the General Assembly, not with the court. See *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 414, 311 A.2d 65; *Bailey* v. *Mars,* 138 Conn. 593, 598, 87 A.2d 388.

The commission determined that Colli violated regulation § 20-328-3 by negotiating for the sale or exchange of property "knowing that such owner had an outstanding listing contract." The record shows that upon learning of the outstanding exclusive listing, Colli's efforts to perform "for another and for a fee" ceased. The activities complained of here were not undertaken by the plaintiffs in their capacity as brokers, but as principals, and the commission lacked jurisdiction to revoke or suspend their licenses for violations of its regulations related thereto. It follows, then, that the com-

mission had no authority to warn the plaintiffs that future violations of the same nature would be grounds for the suspension or revocation of their licenses. That conclusion is dispositive of the appeal and we need not consider the remaining assignments of error.

There is error; the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion LOISELLE, MacDONALD and LONGO, Js., concurred.

HOUSE, C. J. (dissenting). In my view, the record in this case is not sufficient to permit a decision on the merits of the appeal. Although the plaintiffs alleged in their complaint that they purchased the property as principals and not in performance of their business as licensed real estate brokers, there is no finding by the commission that this was in fact the case. Also, although the plaintiffs alleged that they were aggrieved by the order of the defendant commission, the defendant denied this allegation, thus putting the question of aggrievement in issue. Aggrievement is a jurisdictional condition precedent to the taking of an appeal to the Court of Common Pleas; General Statutes §§ 20-322, 20-324j, 20-329*l* and 20-329aa; and a question of fact for that court to determine. *I. R. Stich Associates, Inc.* v. *Town Council,* 155 Conn. 1, 3, 229 A.2d 545; *Luery* v. *Zoning Board,* 150 Conn. 136, 140, 187 A.2d 247; *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 667, 154 A.2d 520. The court made no finding with respect to aggrievement. "Proof of aggrievement was an essential prerequisite to the court's jurisdiction of the subject

matter of the appeal. The parties could not confer jurisdiction of the subject matter of the appeal by agreeing to that prerequisite." *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 509, 242 A.2d 705. In view of the fact that no penalty was imposed on the plaintiffs and the defendant commission's order was limited to the issuance of an advisory interpretation of its regulations and a warning, a determination of the fact of aggrievement was essential to establish jurisdiction for the plaintiffs' appeal. Under the circumstances, I would dismiss the appeal to this court.